IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS,
HOUSTON DIVISION

| | | |
|---|---|---|
| LORI WASHINGTON, ex rel. J.W. | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | C.A. No. 4:18-cv-01848 |
| | § | |
| KATY INDEPENDENT SCHOOL | § | |
| DISTRICT AND OFFICER | § | |
| ELVIN PALEY, INDIVIDUALLY | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Christopher B. Gilbert
State Bar No. 00787535
Southern District No. 17283
Attorney-in-Charge

**THOMPSON & HORTON LLP**
3200 Southwest Freeway, Suite 2000
Houston, Texas 77027
Telephone:     (713) 554-6744
Fax:               (713) 583-7698
cgilbert@thompsonhorton.com

**ATTORNEYS FOR DEFENDANTS KATY ISD
AND ELVIN PALEY**

**OF COUNSEL:**

Hailey R. Janecka
State Bar No. 24099491
Southern District No. 3151241
**THOMPSON & HORTON LLP**
3200 Southwest Freeway, Suite 2000
Houston, Texas 77027
Telephone:  (713) 554-6761
Facsimile:  (713) 583-5643
hjanecka@thompsonhorton.com

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................. iii

INDEX OF EXHIBITS ...................................................................................... vii

I.  NATURE AND SUMMARY OF THE CASE .......................................................1

II.  FACTUAL BACKGROUND ........................................................................2

III.  SUMMARY JUDGMENT STANDARD ..........................................................5

IV. ARGUMENTS AND AUTHORITIES ............................................................6

      A.    Plaintiffs' Section 504 and ADA claims against Katy ISD. ..................6

            1.    J.W. failed to properly exhaust his required administrative remedies under the IDEA, and his Section 504 and ADA claims must therefore be dismissed.................................................................. 6

            2.    Plaintiffs cannot show that any acts taken against them were motivated by J.W.'s disability. ...............................................10

      B.    Qualified immunity bars Plaintiffs' Section 1983 claims against Officer Elvin Paley. .................................................................................11

      C.    Plaintiffs have failed to plead facts that would show that any alleged deprivation of their Fourth or Fourteenth Amendment rights occurred in accordance with official KISD policy or firmly entrenched custom tolerating misconduct, as required for municipal liability under *Monell*.............. 17

      D.    Plaintiffs have failed to prove a violation of a generalized "constitutional right to an education," under either the United States or the Texas Constitution...........................................................................24

V.  CONCLUSION .....................................................................................25

CERTIFICATE OF SERVICE ...........................................................................26

# TABLE OF AUTHORITIES

**Page**

*Alexander v. Eeds*, 392 F.3d 138 (5th Cir. 2004)  .......................................................12

*Anderson v. Creighton*, 483 U.S. 635 (1987)  ..........................................................11

*Anderson v. Liberty Lobby Inc.*, 477 U.S. 242 (1986).....................................................6

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ..................................................................11, 12

*Baker v. Putnal*, 75 F.3d 190 (5th Cir. 1996)  ..................................................12, 19, 21

*Barnes v. Symeonides*, 44 F.3d 1005, 1995 WL 10518 (5th Cir. 1995)  ......................24

*Bennett v. City of Slidell*, 728 F.2d 762 (5th Cir. 1984)  ..........................................19

*Board of County Comm'rs of Bryan County, Okl. v. Brown,* 520 U.S. 397,
    117 S. Ct. 1382 (1997) ...................................................................................18, 21

*Brown v. Houston Indep. Sch. Dist.*, 763 F. Supp. 905 (S.D. Tex. 1991), *aff'd*,
    957 F.2d 866 (5th Cir. 1992), *cert. denied*, 113 S. Ct. 198 (1992) ..................18

*Brown v. Muhlenberg Twp.*, 269 F.3d 205 (3d Cir. 2001) ..........................................21

*C.G. by & through Keith G. v. Waller Indep. Sch. Dist.*, 697 F. App'x 816 (5th Cir. 2017) .........8

*Campbell v. McAllister,* 162 F.3d 94 (5th Cir. 1998)  ..............................................16

*Carroll v. Ellington*, 800 F.3d 154 (5th Cir. 2015) ....................................................15

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)  ...........................................................5

*City of Beaumont v. Bouillion*, 896 S.W.2d 143 (Tex. 1995) ......................................25

*City of Canton v. Harris*, 489 U.S. 378 (1989) .........................................................21

*City of Houston v. Piotrowski*, 237 F.3d 567 (5th Cir. 2001)........................................23

*Collins v. City of Harker Heights, Texas,* 112 S. Ct. 1061 (1992) ..............................18

*Connick v. Thompson*, 563 U.S. 51, 131 S. Ct. 1350 (2011) .......................................21

*D.A. ex rel. Latasha A. v. Hous. Indep. Sch. Dist.*, 629 F.3d 450 (5th Cir. 2010) .......................10

## TABLE OF AUTHORITIES (cont.)

**Page**

*Doe v. Dallas Indep. Sch. Dist.*, 194 F. Supp. 3d 551 (N.D. Tex. 2016) ...............................7, 8, 9

*Fee v. Herndon*, 900 F.2d 804 (5th Cir. 1990) ...................................................................15, 16

*Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398 (5th Cir. 2015)...................................................23

*Fraire v. City of Arlington,* 957 F.2d 1268 (5th Cir. 1992) ........................................................19

*Freeman v. Gore*, 483 F.3d 404 (5th Cir. 2007) ....................................................................13

*Fry v. Napoleon Community Schools*, 137 S. Ct. 743 (2017) ....................................................7, 8

*Gonzales v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745 (5th Cir. 1993) ...........................................18

*Graham v. Connor,* 490 U.S. 386 (1989) ..........................................................................12, 13

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) .........................................................................11

*Hooker v. Dallas Indep. Sch. Dist.*, 2010 WL 4025877 (N.D. Tex. 2010)............................6, 7, 9

*Ingraham v. Wright*, 430 U.S. 651, 97 S. Ct. 1401 (1977) .......................................................15

*Jeffrey v. Bd. of Trustees of Bells ISD*, 261 F. Supp. 2d 719 (E.D. Tex. 2003),
    *aff'd,* 96 F. App'x 248 (5th Cir. 2004) .......................................................................25

*Jett v. Dallas Indep. Sch. Dist.,* 7 F.3d 1241 (5th Cir. 1993) .......................................................18

*Johnson v. Glick*, 481 F.2d. 1028 (2d Cir. 1973) .......................................................................13

*Jones v. Webb*, 45 F.3d 178 (7th Cir. 1995) ...........................................................................14, 15

*Kovacic v. Villareal*, 628 F.3d 209 (5th Cir. 2010) ....................................................................11

*L.F. v. Houston Indep. Sch. Dist.*, 2009 WL 3073926 (S.D. Tex. 2009) .......................................7

*Lawrence v. Kenosha County,* 391 F.3d 837 (7th Cir. 2004) .....................................................19

*Marc V. v. North East Independent School District*, 455 F.Supp.2d 577
    (W.D. Tex. 2006), *aff'd* 242 Fed. Appx. 271 (5th Cir. 2007).........................................9, 10

*Mettler v. Whiteledge,* 165 F.3d 1197 (8th Cir. 1999) ..............................................................19

**TABLE OF AUTHORITIES (cont.)**

**Page**

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) ...................................................................11

*Monell v. City of New York*, 436 U.S. 658, 98 S. Ct. 2018 (1978) .........................18, 19

*Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871 (5th Cir. 2000) ..................................16

*Neague v. Cynkar*, 258 F.3d 504 (6th Cir. 2001) ........................................................14

*Orr v. Copeland*, 844 F.3d 484 (5th Cir. 2016) ..........................................................15

*Pearson v. Callahan*, 555 U.S. 223 (2009) ...........................................................11, 12

*Petta v. Rivera*, 143 F.3d 895 (5th Cir. 1998) ............................................................12

*Pineda v. City of Houston*, 291 F.3d 325 (5th Cir. 2002).............................................23

*Plyler v. Doe*, 457 U.S. 202, 102 S. Ct. 2382 (1982) ..................................................24

*Poole v. City of Shreveport*, 691 F.3d 624 (5th Cir. 2012) ..........................................15

*Reed v. Kerens Indep. Sch. Dist.*, 2017 WL 2463275 (N.D. Tex. 2017) ........................9

*Reese v. Anderson*, 926 F.2d 494 (5th Cir. 1991)..........................................................6

*Reyes v. Manor Indep. Sch. Dist.*, 850 F.3d 251 (5th Cir. 2017) ................................7, 8

*Ripple v. Marble Falls Indep. Sch. Dist.*, 99 F. Supp. 3d 662 (W.D. Tex. 2015) ...........8

*Rodriguez v. Farrell*, 280 F.3d 1341 (11th Cir. 2002) .................................................14

*San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 93 S. Ct. 1278 (1973) ..........24

*Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151 (2001) ...........................................12, 13

*Schultea v. Wood*, 47 F.3d 1427 (5th Cir. 1995) ........................................................12

*Segal v. City of New York*, 459 F.3d 207 (2d Cir. 2006) .............................................21

*Serafin v. School of Excellence*, 252 Fed.Appx. 684 (5th Cir. 2007) ...........................16

*Siegert v. Gilley*, 500 U.S. 226 (1991) ......................................................................11

**TABLE OF AUTHORITIES (cont.)**

**Page**

*Smith v. Watkins,* 159 F.3d 1137 (8th Cir. 1998) .......................................................19

*Snyder v. Trepagnier,* 142 F.3d 791 (5th Cir. 1998) ..................................................19

*Spiller v. City of Texas City*, 130 F.3d 162 (5th Cir. 1997) .....................................18

*Stock v. Texas Catholic Interscholastic League*, 364 F. Supp. 362 (N.D. Tex. 1973) .................24

*Thomas v. Roberts*, 261 F.3d 1160 (11th Cir. 2001) ...................................................21

*Topalian v. Ehrman*, 954 F.2d 1125 (5th Cir. 1992) ....................................................6

*United States v. Batchelder*, 442 U.S. 114, 99 S. Ct. 2198 (1979) ............................17

*Webster v. City of Houston*, 735 F.2d 838 (5th Cir. 1984) ..........................................23

*Winstead v. Box*, 2011 WL 1057558 (5th Cir., March 21, 2011) ................................11

*Worsham v. City of Pasadena*, 881 F.2d 1336 (5th Cir. 1989) ....................................18

*Young v. Dallas Indep. Sch. Dist.*, 2017 WL 4326009
     (N.D. Tex. 2017), *report and recommendation adopted*, 2017 WL 4326091
     (N.D. Tex. 2017) ...............................................................................................8, 9

## <u>INDEX OF EXHIBITS</u>

The following exhibits are attached to Defendants' Motion for Summary Judgment, and are herein incorporated for all purposes:

Exhibit A:      Declaration of Officer Elvin Paley;

Exhibit B:      Declaration of Captain Kevin Tabor;

Exhibit C:      Statement of Ashley Lucas;

Exhibit D:      Sworn Statement of Larry Hamilton;

Exhibit E:      Declaration of Denise Majewski;

Exhibit F:      Sworn Statement of Johnny Ogelsby;

Exhibit G:      Body Camera Footage of Incident;

Exhibit H:      Request for a SPED Due Process Hearing;

Exhibit I:      Order Dismissing Due Process Hearing.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS,
HOUSTON DIVISION

| | | |
|---|---|---|
| LORI WASHINGTON, ex rel. J.W. | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | C.A. No. 4:18-cv-01848 |
| | § | |
| KATY INDEPENDENT SCHOOL | § | |
| DISTRICT AND OFFICER | § | |
| ELVIN PALEY, INDIVIDUALLY | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF THE COURT:

Defendants Katy Independent School District ("KISD" or the "District") and Officer Elvin

Paley file their Motion for Summary Judgment, as follows:

## I.  NATURE AND SUMMARY OF THE CASE

Plaintiffs Lori Washington, on behalf of her son J.W., brought suit against Defendant Katy

Independent School District and Officer Elvin Paley, over an incident that occurred at Mayde

Creek High School on or about November 30, 2016.  Plaintiff J.W., a then 17-year old special

education student, was physically restrained and tased by KISD Officer Elvin Paley, after J.W.

physically pushed his way past another employee who was trying to stop J.W. from leaving the

school building.  As a result of that incident, Plaintiffs filed suit against the District and Officer

Paley on June 5, 2018, asserting numerous claims against the District and Officer Paley, including

claims for excessive force (*id*. at ¶¶ 117-129), deprivation of a liberty interest in bodily integrity

(*id*. at ¶ 132), and deprivation of a privacy interest in bodily integrity (*id*. at ¶ 133), all under the

Fourth and/or Fourteenth Amendments violation of the Equal Protection Clause of the Fourteenth

Amendment (*id*. at ¶ 137); violation of J.W.'s "constitutional right to an education," under Article

1, Sections 3 and 4 of the Texas Constitution and the Fourteenth Amendment to the United States Constitution (*id*. at ¶¶ 138-145); and violation of Section 504 Rehabilitation Act of 1973, 29 U.S.C. §794 ("Section 504") (*id*. at ¶¶ 146-154), and the Americans with Disabilities Act, 42 U.S.C. 12100 *et seq*. ("ADA") (*Id*. at ¶¶ 155-163.)

The District and Officer Paley moved to dismiss all claims against them on September 4, 2018.  [Dkt. No. 7.]  In response, Plaintiffs moved for and received permission to file their First Amended Complaint (hereinafter "FAC"), on September 20, 2018.  [Dkt. No. 12.]  Plaintiffs' FAC did not change any of the Defendants or the causes of action being asserted in this matter; instead, it added a section called "Procedural Resume" on pages 3 and 4, which appeared intended to address the failure to exhaust administrative remedies asserted by the Defendants in their Motion to Dismiss.  No other significant changes were made.

At the Initial Scheduling Conference held in this matter, the parties agreed to convert the Defendants' Amended Motion to Dismiss to a Motion for Summary Judgment, [*see* Dkt. No. 18], and the Court directed the parties to engage in "discovery targeted to filing a motion for summary judgment and response, particularly on the *Monell* and qualified immunity issues."  [Dkt. No. 17.]  The parties have done so, and the Defendants now move for summary judgment.

## II.  <u>FACTUAL BACKGROUND</u>

In November 2016, Plaintiff J.W. was a 17-year old special education student at Mayde Creek High School, who classified for special ed as emotionally disturbed and as intellectually disabled.  (First Amended Complaint ("FAC"), ¶¶ 31-32.)  J.W. is very large (the police report lists him as 6'2" and 250 pounds).  (Ex. B-

On November 30, 2016, J.W. and another student had finished their assignment and were playing a card game.  (Ex. C.)  The students were bickering with each other, and the classroom aide told the students that if they weren't going to play nice, she was going to take up their cards.

(*Id.*)  The other student told J.W., "yeah, quit being stupid," and that triggered J.W., who became very angry, got up, and began yelling and cursing.  (*Id.*)  J.W. then approached the other student, punched him in the chest and knocked him out of his chair.  (*Id.*)  The aide ran out into the hallway to get the math teacher, but when she turned J.W. had followed her to the door, "cursing and yelling at everyone."  (*Id.*)  The teachers tried to stop J.W., but he stormed out of the classroom and down the hall.  (*Id.*)  The math teacher alerted Denise Majewski (Student Support Principal) by email that J.W. had gotten mad at another student, hit him in the chest, and was on the loose in the school. (Ex. E, ¶ 2; Ex. E-1.)

J.W. went to the PASS classroom, which is one of his places to go when he needs to cool down, but when he got there another student was already in the room, which made him even more upset.  (Ex. D.)  J.W. immediately grabbed a student desk and threw it across the room, and then began to shout, "I hate this school."  (*Id.*)  Larry Hamilton, the PASS teacher, tried unsuccessfully to calm J.W. down.  (*Id.*)  J.W. then kicked the door and walked down the S200 hallway with Hamilton following, and finally stopped in the doorway leading to the outside/tennis court area. (*Id.*)  Jill Voss, a health teacher, witnessed J.W. going down the hallway screaming curse words. She said, "Excuse me, watch your mouth," and J.W. replied "Fuck you bitch" and continued down the hallway.  (Ex. E, ¶ 10; Ex. E-3.)

As they were walking towards the exit to the gym, Katy ISD Security Officer Johnny Oglesby got in front of J.W. and physically blocked the door leading outside.  (Ex. A, ¶ 3; Ex. E, ¶ 3; Ex. F.)  J.W. kept saying that he just wanted to leave the school and walk home, but the Katy ISD officials involved felt that it was very important to keep J.W. inside the school building, due to his limited cognitive abilities and the fact that he might get hit by a car if he left the building. (Ex. A, ¶ 4; Ex. E, ¶ 4.)  Oglesby kept telling him that he couldn't leave the school, and that they

needed to contact his mother.  (*Id*.)  Officer Elvin Paley, who had heard the call for security assistance over the radio, arrived shortly thereafter.  (Ex. A, ¶ 3.)

J.W. continued to get more agitated and aggressive, and was being more forceful about trying to get through the door.  (Ex. A, ¶ 5; Ex. E, ¶ 4.)  All of the sudden J.W. started trying to push his way past Oglesby and out the door.  (Ex. A, ¶ 6; Ex. E, ¶ 4.)  Paley and Officer Molina moved in and attempted to hold J.W. in the doorway, to keep him from leaving the building.  (*Id*.)  As a result of J.W.'s large stature compared to the officers (Paley is only 5'6"), they quickly realized it was going to be difficult to gain control of him. Paley instructed J.W. to calm down several times.  (Ex. A, ¶ 7.)  Officer Paley then told J.W. that he did not want to have to tase him and that he needed to calm down. (Ex. A, ¶¶ 6-7; Ex. E, ¶ 4.)  J.W. was very angry, and pushed with extreme force through the doorway.  (*Id*.)  The situation had escalated to the point where the officers could not hold J.W. back any longer.  (*Id*.) At that time, Officer Paley advised Oglesby and Molina to release J.W., and he then deployed his taser on J.W.'s right side of the chest.  (*Id*.)  The taser did not have any effect on J.W., and he continued to walk away.  (Ex. A, ¶ 7.)  Officer Paley then "dry stunned" (or "drive stunned") J.W., and he went down on both knees and lay down on the ground in a prone position.  (*Id*.)  Officer Paley commanded J.W. to put his hands behind his back.  (*Id*.)  J.W. complied, and Molina tried to handcuff J.W. with one set of handcuffs, but because of his size, Molina had to link two handcuffs together in order to get him fully handcuffed.  (*Id*.)  Molina and Paley then positioned J.W. on his side, so he could maintain a clear airway, and Paley told Oglesby to contact the nurse.  (Ex. A, ¶ 8; Ex E, ¶ 5.)  The entire incident was captured on Officer Paley's body camera, and the video is attached as Exhibit G.

School Nurse Shirley Willett was contacted immediately and treated J.W.  (Ex. A, ¶ 9; Ex E, ¶ 5.)  EMS arrived at approximately 1:00 p.m.  (Ex. A, ¶ 10; Ex E, ¶ 5.)  Majewski attempted to contact J.W.'s parent (Lori Washington), but was unable to contact her, because her phone was

unable to accept new messages.  (Ex. E, ¶ 6.)  Majewski tried another emergency number to no avail. (*Id*.)  Majewski then sent Washington emails, but received no response from Washington. (*Id*.; *see also* Ex. E-2.)  J.W. was stabilized at approximately 1:30 p.m. and brought back into the security office.  (Ex. A, ¶ 10; Ex E, ¶ 7.)

Majewski continued to try to contact Washington. (Ex. E, ¶ 7.)  Finally at approximately 2:00 p.m. Washington called. (*Id*.)  Majewski explained the incident, and Washington said she was on her way. (*Id*.)  At approximately 2:45 p.m. Majewski received a call from the Westlake EMS because an ambulance had been dispatched to the school again. (Ex E, ¶ 8.)  Majewski explained that the EMS had arrived and left approximately two hours earlier. (*Id*.)  The person told Majewski that Washington made a 911 call a little earlier, and was adamant that J.W. be taken to the hospital. (*Id*.)  They assessed the student as requested by the parent, and then they left campus at approximately 3:05 p.m.  (Ex E, ¶ 9.)

After this incident, J.W.'s mother kept him home from school for a period of time.  (Ex. E, ¶¶ 11-14.)  Majewski and other school officials made numerous attempts to contact Mrs. Washington about J.W., but she failed to return most of their calls.  (*Id*.)  School officials also made several attempts to schedule an ARD meeting, both to discuss J.W.'s absences and to discuss his education plan for the upcoming school year, but they had difficulty communicating with Mrs. Washington.  (*Id*.)  The ARD was set for April 25, 2017, but on that date Mrs. Washington unexpectedly showed up to the school with an attorney, so the school had to re-schedule to allow the school attorney to attend.  (*Id*.)  The ARD was finally held on May 22, 2017.  (*Id*.)

### III.  <u>SUMMARY JUDGMENT STANDARD</u>

A court may terminate litigation by rendering summary judgment when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A material fact issue is one that might affect the

outcome of the suit under the governing law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249 (1986). Once the party seeking summary judgment makes the initial showing, negating any disputed, material fact, the party opposed to the motion must offer evidence reflecting the existence of one or more genuine issues of material fact. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). Conclusory assertions are insufficient to raise a genuine issue of material fact precluding summary judgment. *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991).

## IV. <u>ARGUMENTS AND AUTHORITIES</u>

**B.    Plaintiffs' Section 504 and ADA claims against Katy ISD.**

**1.    J.W. failed to properly exhaust his required administrative remedies under the IDEA, and his Section 504 and ADA claims must therefore be dismissed.**

Plaintiffs' First Amended Complaint alleges that Defendants failed to provide J.W. access to public education and reasonable educational accommodations for his disabilities. Specifically, Plaintiffs allege that the District deprived J.W. of his rights, thereby "causing him to miss school and educational benefit for approximately six months." (FAC, ¶ 114.) Plaintiffs also complain that "[t]he actions or inactions of Defendant Paley also violated J.W.'s rights under the Constitution of Texas and the Constitution of United States as to a free and proper education." (*Id.* at ¶ 146.) Lastly, Plaintiffs complain that "KISD failed and refused to reasonably accommodate and modify services to him, in violation of Title II of the ADA." (*Id.* at ¶ 168.) Plaintiffs claim as remedies that J.W. is entitled to "educational opportunities to the same extent as a non-disabled student." (*Id.* at ¶ 183(a).)

The Individuals with Disabilities Education Act, 20 U.S.C. § 1415 *et seq.* ("IDEA") requires any issue regarding the identification, evaluation, educational placement, or the provision of a free appropriate public education ("FAPE") to a child with a disability, to be first heard in an administrative hearing under procedures established by state law. *See* 20 U.S.C. §§ 1415(b)(6)(A); 1415(f); *see also Hooker v. Dallas Indep. Sch. Dist.*, 2010 WL 4025877, at *5 (N.D. Tex. 2010).

Texas state law affords a person complaining about a lack of educational access a due process hearing conducted by the Texas Education Agency ("TEA"), and the right to bring an action in state or federal court if aggrieved by the TEA's findings on issues presented at the due process hearing.  *Hooker*, 2010 WL 4025877, at *5.

The IDEA exhaustion requirement applies to J.W.'s educational claims even though he does not plead a claim under the IDEA.  The IDEA provides that "before the filing of a civil action under such laws seeking relief that is also available under [the IDEA], the procedures under [the IDEA's administrative review provisions] shall be exhausted to the same extent as would be required had the action been brought under [the IDEA]."  20 U.S.C. § 1415(l).  Thus, a plaintiff must exhaust administrative remedies under the IDEA before bringing Section 504 or ADA claims for relief that overlaps with the relief available under the IDEA.  *See Doe v. Dallas Indep. Sch. Dist.*, 194 F. Supp. 3d 551, 560 (N.D. Tex. 2016); *L.F. v. Houston Indep. Sch. Dist.*, 2009 WL 3073926, at *22 (S.D. Tex. 2009).

In *Fry v. Napoleon Community Schools*, 137 S. Ct. 743 (2017), the Supreme Court recently addressed how to determine whether claims under Section 504 and the ADA "overlap with, and are thus covered by, the IDEA's exhaustion requirement."  *Reyes v. Manor Indep. Sch. Dist.*, 850 F.3d 251, 256-57 (5th Cir. 2017) (citing *Fry*).  A plaintiff must exhaust administrative remedies under the IDEA if "a lawsuit seeks relief for the denial of a free appropriate public education."  *Fry*, 137 S. Ct. at 754.  "If a lawsuit charges such a denial, the plaintiff cannot escape [the IDEA exhaustion requirement] merely by bringing her suit under a statute other than the IDEA."  *Id.*  The Supreme Court distinguished between *educational services-related* relief available under the IDEA, Section 504, and the ADA with respect to the denial of FAPE, and Section 504 and the ADA's more general applications "to root out disability-based discrimination" in all public institutions.  *Id.* at 756.  According to the Court:

One clue to whether the gravamen of a complaint against a school concerns the denial of a FAPE, or instead addresses disability-based discrimination, can come from asking a pair of hypothetical questions. First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school—say, a public theater or library? And second, could an adult at the school—say, an employee or visitor—have pressed essentially the same grievance? When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject; after all, in those other situations there is no FAPE obligation and yet the same basic suit could go forward. But when the answer is no, then the complaint probably does concern a FAPE, even if it does not explicitly say so; for the FAPE requirement is all that explains why only a child in the school setting (not an adult in that setting or a child in some other) has a viable claim.

*Id.*

With respect to the educational access claims in this suit, the answer to both questions posited by the Supreme Court is "no". J.W. could not bring his claim regarding a "free and proper education" (FAC, ¶ 146) and complain about "loss of educational opportunities" (*id*. at ¶ 183(a)) against a non-educational public facility. Likewise, an adult employee or visitor of the District could not complain about "miss[ing] school and educational benefit for approximately six months" (*id*. at ¶ 108), because such educational services are only available to public school students. Thus, Plaintiffs bring a quintessential claim regarding the alleged denial of FAPE to J.W. that is subject to the IDEA's exhaustion requirement. *See, e.g.*, *Reyes*, 850 F.3d at 256-57 (applying the *Fry* test and holding that a Section 504 claim that a school district "hinder[ed] honest consideration" of a student's "unique and individualized needs" was subject to IDEA exhaustion requirement); *C.G. by & through Keith G. v. Waller Indep. Sch. Dist.*, 697 F. App'x 816, 820-21 (5th Cir. 2017) (holding Section 504 claim regarding a child's classroom placement was not independent of an IDEA claim); *Doe*, 194 F. Supp. 3d at 560 (holding IDEA exhaustion required with respect to a Title IX claim regarding deprivation of access to educational opportunities and benefits); *Ripple v. Marble Falls Indep. Sch. Dist.*, 99 F. Supp. 3d 662, 686 (W.D. Tex. 2015). The IDEA's exhaustion requirement is jurisdictional. *See Young v. Dallas Indep. Sch. Dist.*, 2017 WL 4326009,

at *6 (N.D. Tex. 2017), *report and recommendation adopted*, 2017 WL 4326091 (N.D. Tex. 2017); *Reed v. Kerens Indep. Sch. Dist.*, 2017 WL 2463275, at *5 (N.D. Tex. 2017); *Hooker*, 2010 WL 4025877, at *6.

Plaintiffs fail to establish subject matter jurisdiction in this Court for their ADA and Section 504 claims, because they cannot show that they *properly* alleged exhaustion of administrative remedies under the IDEA with respect to their claims concerning J.W.'s educational access and accommodations. *See Doe*, 194 F. Supp. 3d at 559-60. While Plaintiffs' only significant addition to their First Amended Complaint is to allege that they did file a Petition requesting a due process hearing from TEA (*see* FAC, ¶ 7),[1] in which they also asserted J.W.'s Section 504 and ADA claims (*id*. at ¶ 8), but that the hearing officer dismissed all non-IDEA claims for want of jurisdiction (*id*. at ¶ 10), what the Plaintiffs fail to tell this Court is that the hearing officer also dismissed their IDEA claims as untimely. (*See* Exhibit I.)

So while Plaintiffs did attempt to exhaust their administrative remedies by requesting a hearing under the IDEA, they did not *properly* exhaust those remedies, because their request for a due process hearing was found to be untimely. (Exhibit I.) Plaintiffs cannot bring non-IDEA claims subject to the IDEA exhaustion requirement, if their request for a due process hearing under the IDEA was untimely. Filing a belated due process complaint that was dismissed on grounds of timeliness is not exhaustion under the IDEA, because the merits of their claims were not addressed by such proceeding, as was held in *Marc V. v. North East Independent School District*, 455 F.Supp.2d 577, 591 n.4 (W.D. Tex. 2006), *aff'd* 242 Fed. Appx. 271 (5th Cir. 2007). Because Plaintiffs here failed to timely request a due process hearing, they did not properly exhaust their administrative IDEA remedies, and this Court therefore lacks jurisdiction to "consider [J.W.'s] derivative [Section 504 and ADA] claim[s] based upon the time-barred IDEA claims." *Marc V*,

---

[1] For the record, the Petition filed by the Plaintiffs with TEA is attached as Exhibit H.

455 F. Supp. 2d at 591 n.4.  Summary judgment should therefore be granted on Plaintiffs' claims under Section 504 and the ADA as a matter of law for lack of subject matter jurisdiction.

> **2.**     **Plaintiffs cannot show that any acts taken against them were motivated by J.W.'s disability.**

Even if the Plaintiffs properly exhausted their administrative remedies, they still cannot show that any of the acts taken against J.W. were motivated by his disability.  Section 504 provides that "[n]o otherwise qualified individual with a disability in the United States, shall, ***solely by reason of her or his disability***, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination." 29 U.S.C. § 794(a) (emphasis added); *see also D.A. ex rel. Latasha A. v. Hous. Indep. Sch. Dist.*, 629 F.3d 450, 453 (5th Cir. 2010).  Similarly, the ADA provides that "no qualified individual with a disability shall, ***by reason of such disability***, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132 (emphasis added).

Plaintiffs have failed to show that the tasing incident on November 30, 2016 was motivated in any way by J.W.'s disability, as opposed to his attempt to force his way past Ogelsby.  To the extent that Plaintiffs claim that the District somehow failed to accommodate J.W.'s disabilities after the taser incident because he missed school, Plaintiffs admit that it was Ms. Washington who voluntarily decided to keep J.W. home from school, "[d]ue to fear for his safety," and that that was what caused him to miss school "and educational benefits" for six months.  (FAC, ¶ 114.) Majewski testified at the deposition that J.W. was not prohibited from coming to school, and that the school made multiple phone calls to Washington to try to get J.W. to come back to school, but that Washington was not good at returning calls.  (Ex. E, ¶¶ 11-14.)  Plaintiffs' decision to keep J.W. home from school for safety reasons, however well-intentioned, does not mean that the

District was somehow discriminating against him on the basis of his disability, and as such summary judgment on this claim is appropriate.

**B.      Qualified immunity bars Plaintiffs' Section 1983 claims against Officer Elvin Paley.**

Plaintiffs seek damages against Officer Paley in his individual capacity for excessive force, deprivation of a liberty and privacy interest in bodily integrity under the Fourth and/or Fourteenth Amendments; violation of the Equal Protection Clause of the Fourteenth Amendment; and violation of J.W.'s "constitutional right to an education," under Article 1, Sections 3 and 4 of the Texas Constitution and the Fourteenth Amendment to the United States Constitution.   The Supreme Court has long held that public servants are immune from suit unless their conduct violated "clearly established" federal law.   *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Immunity protects public officials from the disruption and costs associated with litigation. *Mitchell v. Forsyth*, 472 U.S. 511 (1985).   Because of this public policy, plaintiffs may not engage in discovery until they have supported their constitutional claims with sufficient facts that, if true, would overcome the immunity defense.   *See Ashcroft v. Iqbal,* 556 U.S. 662, 685-86 (2009); *Winstead v. Box*, 2011 WL 1057558 (5th Cir., March 21, 2011).

The availability of immunity is a question of law.   *Siegert v. Gilley*, 500 U.S. 226, 231-232 (1991).   Courts must determine (i) whether the plaintiff has described a violation of a constitutional right; and (ii) whether the right was "clearly established" at the time of the official's conduct. *Pearson v. Callahan*, 555 U.S. 223, 223-24 (2009).   Courts may decide which of the two prongs should be decided first in light of the circumstances of the case.   *Id.* at 225.   The plaintiff bears the burden of showing that the official violated clearly established law.   *Kovacic v. Villareal*, 628 F.3d 209, 212 (5th Cir. 2010).   The plaintiff must identify the violation of a "particularized" right. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).   A plaintiff may not defeat immunity by describing a "general proposition" of constitutional law, such as a right to due process.   *Ashcroft*

*v. Al-Kidd*, 563 U.S. 731, 742 (2011).  The plaintiff must show that the "contours" of the right were "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Alexander v. Eeds*, 392 F.3d 138, 146 (5th Cir. 2004).  This means that "existing precedent" must have placed the constitutional question "beyond debate." *Ashcroft*, 563 U.S. at 741.  In the Fifth Circuit, once a defendant asserts qualified immunity, the plaintiff must respond with factual specificity and "fairly engage" the immunity defense.  *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995).  The standard requires more than conclusory assertions.  *See Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996) (holding that this heightened pleading standard "requires claims of specific conduct and actions giving rise to a constitutional violation.").  The plaintiff must "plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

With regards to the first prong of the qualified immunity test, Plaintiffs have failed to show that Officer Paley violated a constitutional right of J.W.  *Pearson*, 555 U.S. at 223-24.  All of Plaintiffs' claims against Officer Paley are based on his restraint of J.W., including his use of the taser and handcuffs.  All claims that a law enforcement officer has used excessive force in the course of an arrest are analyzed under the Fourth Amendment[2] and its "reasonableness" standard.  *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151 (2001) (citing *Graham v. Connor*, 490 U.S. 386, 388, 394 (1989)).  As the Fifth Circuit has noted, a plaintiff has a high burden in order to state a claim for excessive force in violation of the Constitution. A plaintiff must allege:

(1)     an injury, which

(2)     resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was

---

[2] *See Graham v. Conner*, 490 U.S. 386 (1989) (stating that all claims brought under § 1983 in which it was alleged that law enforcement officers used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other seizures of a free citizen were properly analyzed under the Fourth Amendment's "objective reasonableness" standard…); *See also Petta v. Rivera*, 143 F.3d 895 (5th Cir. 1998).

(3)     objectively unreasonable.

*Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007). To gauge the objective reasonableness of the force used by law enforcement officer, the Court must balance the amount of force used against the need for that force. *Id*. When questions arise, "qualified immunity operates... to protect officers from the sometimes 'hazy border between excessive and acceptable force,' and to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful." *Saucier v. Katz*, 533 U.S. 194, 206 (2001) (internal citation omitted).

Moreover, in determining whether or not an officer used excessive force, the Court must keep in mind that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham,* 490 U.S. at 397, 109 S. Ct. 1865.  As the Supreme Court has noted:

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. ... With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment.

*Id*. at 396, 109 S. Ct. at 1872 (quoting *Johnson v. Glick*, 481 F.2d. 1028, 1033 (2d Cir. 1973)).

In this case, when Officer Paley approached J.W., the Plaintiffs admit that he "was in the midst of an emotional breakdown and anxiety attack."  (FAC, ¶ 3.)  Officer Paley stood back and watched J.W. as Ogelsby tried to de-escalate the situation and talk him down, but could tell that the longer school officials talked to J.W., the more irritated he became, finally reaching the point where he was not responding well to normal conversation.  As Paley explained his actions in his police report:

> There were 2 doors exiting the building where we were all standing. Guard Oglesby was standing in front of the left exit door, when [J.W.] attempted to exit the right door. In doing so, Guard Oglesby tried to hold on the right door with his left hand,

> but [J.W.] was too strong to be maintained by one arm. I saw Guard Oglesby
> struggling with [J.W.], so I grabbed [J.W.] and told him 4 times to calm down,
> before I tased him. [J.W.] replied "Do it, fucking it!" Officer Molina also grabbed
> [J.W.] from behind. Then [J.W.] tried to push through the door with all of his might
> and I realize that he was too big and too strong for us to handle. I told [J.W.] "I
> don't want to hurt you" and several times again to calm down, but he refused.
> Guard Oglesby, Officer Molina, and I physically struggled with [J.W.] for
> approximately 1 to 2 minutes. I felt that the situation reached a point where my
> verbal commands, soft and hard hand techniques were not effective, and that I
> would have to result to my next level of use of force (Taser) to restore order. So, I
> advised Guard Oglesby and Officer Molina to release [J.W.], deployed my
> department issued Taser, and administered 1 Taser cycle on [J.W.].

(Ex. B-1.) Paley did not initially intend to tase J.W., but only to physically restrain him (the next step after verbal de-escalation fails to work). (Ex. A, ¶ 6.) Because J.W. was completely out of control and much larger than Paley and Molina, they quickly realized that they were not going to be able to physically restrain J.W., and only then did Paley make the decision to use the non-lethal taser. (*Id.*) Stopping a student –especially one who has limited intellectual capacities, such as J.W. -- from leaving a school is imminently reasonable.

The mere fact that the officers handcuffed J.W. after he was restrained does not indicate that he was the subject of excessive force; a number of courts have noted that using procedures similar to those employed by KISD to immobilize and eventually handcuff suspects is both reasonable and not an excessive use of force. *See*, *e.g.*, *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002); *Neague v. Cynkar*, 258 F.3d 504, 508 (6th Cir. 2001). In *Jones v. Webb*, 45 F.3d 178 (7th Cir. 1995), a police officer suspected that a 12-year old boy had been engaged in a fight with a girl, but the boy fled when he tried to question him. The officer followed and eventually knocked the boy to the ground, placed a knee in his back, and handcuffed the boy. The court rejected the boy's excessive force claim:

> We agree that in these circumstances, a reasonable police officer certainly could have
> believed that the limited force applied was proper and was not unconstitutionally
> excessive in light of clearly established law.

*Id.* at 184.  Likewise, use of a taser to subdue a suspect who is resisting has been found not to constitute excessive force.  *See, e.g.*, *Orr v. Copeland*, 844 F.3d 484, 493 (5th Cir. 2016); *Carroll v. Ellington*, 800 F.3d 154, 176 (5th Cir. 2015); *Poole v. City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012).  Because Officer Paley acted reasonably even under the facts as alleged by J.W. and did not employ force that was clearly excessive, he did not violate J.W.'s clearly established rights under the Fourth or Fourteenth Amendment.

To the extent Plaintiffs are alleging that Officer Paley's use of force also violated J.W.'s substantive due process rights or deprived him of a liberty interest in bodily integrity, Paley is also entitled to qualified immunity, because Plaintiffs' claims are barred by the Fifth Circuit's decision in *Fee v. Herndon*, 900 F.2d 804 (5th Cir. 1990) and its progeny. In *Fee*, a case originating out of Texas, the plaintiff was a sixth-grade special-education student whose parents claim that the principal beat their child so excessively the student was forced to remain in psychiatric rehabilitation for a total of six months. The plaintiffs asserted claims against the school district and the principal for excessive force under the Fourth or Fourteenth Amendment. Recognizing that the Supreme Court in *Ingraham v. Wright*, 430 U.S. 651, 97 S. Ct. 1401 (1977) held that reasonable corporal punishment was constitutionally permissible, but excessive corporal punishment was not, the court held that "[t]his dispute presents the question of whether the federal Constitution independently shields public school students from excessive discipline, irrespective of state-law safeguards."  900 F.2d at 808. The Court held:

> Our precedents dictate the injuries sustained incidentally to corporal punishment, irrespective of the severity of these injuries or the sensitivity of the student, do not implicate the due process clause if the forum state affords adequate post-punishment civil or criminal remedies for the student to vindicate legal transgressions. The rationale for this rule, quite simply, is that such states have provided all the process constitutionally due.

*Id*. at 808.  The court noted that the Constitution is not intended to be a source of federal criminal or tort law. After examining Texas law, the Fifth Circuit determined that injuries to students during discipline do not violate the Fourth or Fourteenth Amendment:

> Although the injuries are alleged to have been severe, the student's substantive due process guarantees have not been violated under the rationale of *Cunningham*, as Texas does not allow teachers to abuse students with impunity and provide civil and criminal relief against educators who breached statutory and common law standards of conduct.

*Id*. at 809.   The Fifth Circuit therefore upheld the dismissal of the Fourth and Fourteenth Amendment claims against all defendants arising out of the beating of the student.  *See also Moore v. Willis Indep. Sch. Dist*., 233 F.3d 871 (5th Cir. 2000).

This case is no different than *Campbell v. McAllister,* 162 F.3d 94 (5th Cir. 1998), where a student plaintiff alleged that McAllister, a city police officer assigned to the high school, removed him from his classroom by "slam[ming] [Dennis] to the floor" and "dragg[ing] [him] along the ground to the principal's office."   In analyzing Campbell's excessive force /substantive due process claims under the Fourth and Fourteenth Amendments against the police officer, the court cited to *Fee* and held that such claims are prohibited:

> [I]njuries sustained incidentally to corporal punishment, irrespective of the severity of these injuries or the sensitivity of the student, do not implicate the due process clause if the forum state affords adequate postpunishment civil or criminal remedies for the student to vindicate legal transgressions.

*Id*. at *5 (citing Fee, 900 F .2d at 808).  The Court then concluded as a matter of law that "Texas provides civil and criminal post-deprivation remedies for the excessive use of force by school officials."  *Id*.; *see also Serafin v. School of Excellence*, 252 Fed.Appx. 684 (5th Cir. 2007).  Like in *Fee* and *Campbell*, the Plaintiffs here assert claims for substantive due process violations under the Fourth and Fourteenth Amendments, based on the excessive use of force during excessive

discipline.[3] Like in *Fee* and *Campbell*, those claims must be dismissed as a matter of law, and therefore Officer Paley is entitled to qualified immunity. For the same reasons, said claims must also be dismissed as a matter of law against Defendant Katy Independent School District.

Finally, Plaintiffs appear to be asserting a claim for violation of the Equal Protection Clause of the Fourteenth Amendment against Officer Paley. "The equal protection clause prohibits selective enforcement based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *United States v. Batchelder*, 442 U.S. 114, 125 n. 9, 99 S. Ct. 2198, 2205 n. 9 (1979). Plaintiffs have failed to allege any facts that would suggest that any protected class to which J.W. might belong actually motivated Officer Paley's actions towards J.W. (*See* FAC, ¶ 144.) Because the Plaintiffs have failed to identify any suspect or protected class to which J.W. might belong that actually motivated any actions against him, Officer Paley is entitled to qualified immunity from said claims. For the same reasons, Plaintiffs' equal protection claim against the District in this case should be dismissed as well.

**C.    Plaintiffs have failed to plead facts that would show that any alleged deprivation of their Fourth or Fourteenth Amendment rights occurred in accordance with official KISD policy or firmly entrenched custom tolerating misconduct, as required for municipal liability under *Monell*.**

As noted above, Plaintiffs assert claims against the District for excessive force (FAC, ¶¶ 124-136), deprivation of a liberty interest in bodily integrity (*id*. at ¶ 139), and deprivation of a privacy interest in bodily integrity (*id*. at ¶ 140), all under the Fourth and/or Fourteenth Amendments; violation of the Equal Protection Clause of the Fourteenth Amendment (*id*. at ¶ 144); and violation of J.W.'s "constitutional right to an education," under the Fourteenth Amendment to the United States Constitution. (*Id*. at ¶¶ 145-152.) Plaintiffs' constitutional claims

---

[3] Plaintiffs concede in their Complaint that using restraints is a form of discipline. (*See* FAC, ¶ 23.)

against the District are asserted, as they must be, pursuant to 42 U.S.C. § 1983.  (*Id.* at ¶ 5.)  To

succeed on their Section 1983 claims against the District, Plaintiffs must show that the District

itself is liable for the violations. *See generally Collins v. City of Harker Heights, Texas,* 112 S. Ct.

1061, 1066 (1992). A school district cannot be held liable under § 1983 for an injury inflicted by

its employees or agency based on a theory of vicarious or *respondeat superior* liability. *Board of*

*County Comm'rs of Bryan County, Okl. v. Brown,* 520 U.S. 397, 402, 117 S. Ct. 1382, 1388 (1997).

The Supreme Court set forth its standard on municipal liability in *Monell v. City of New York*:

> We conclude, therefore, that a local government may not be sued under § 1983 for
> an injury inflicted solely by its employees or agents. Instead, it is when execution
> of a government's policy or custom, whether made by its lawmakers or by those
> whose edicts or acts may fairly be said to represent official policy, inflicts the injury
> that the government as an entity is responsible under § 1983.

*Monell v. City of New York*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037-38 (1978).

In order to state a constitutional claim against a school district under § 1983, then, a plaintiff

must demonstrate that the constitutional violation occurred in accordance with official government

policy or firmly entrenched custom. *Brown v. Houston Indep. Sch. Dist.*, 763 F. Supp. 905 (S.D.

Tex. 1991), *aff'd*, 957 F.2d 866 (5th Cir. 1992), *cert. denied*, 113 S. Ct. 198 (1992); *Worsham v.*

*City of Pasadena*, 881 F.2d 1336 (5th Cir. 1989). The Fifth Circuit has noted that the plaintiff's

description of the government's policy or custom and its relationship to the underlying

constitutional violation cannot be conclusory, but must contain specific facts.  *Spiller v. City of*

*Texas City*, 130 F.3d 162, 167 (5th Cir. 1997).  A school district may be held liable only if the

constitutional injury was caused by an official policy or custom promulgated by government

officials who have final policy making authority. *Collins*, 503 U.S. at 120-21.  Under Texas law,

the final policy-making authority for an independent school district rests with the school district's

board of trustees. *Jett v. Dallas Indep. Sch. Dist.,* 7 F.3d 1241, 1245 (5th Cir. 1993); *Gonzales v.*

*Ysleta Indep. Sch. Dist.*, 996 F.2d 745, 752 (5th Cir. 1993).

The Fifth Circuit and other courts of appeals have held on numerous occasions that excessive force claims against governmental entities must be dismissed as a matter of law, when the plaintiff cannot show that his injuries were caused by a policy or custom of the entity.  *See e.g., Snyder v. Trepagnier,* 142 F.3d 791, 795-99 (5th Cir. 1998); *Baker v. Putnal,* 75 F.3d 190, 199-200 (5th Cir. 1996); *Fraire v. City of Arlington,* 957 F.2d 1268, 1277-81 (5th Cir. 1992); *see also Lawrence v. Kenosha County,* 391 F.3d 837, 843-44 (7th Cir. 2004); *Mettler v. Whiteledge,* 165 F.3d 1197, 1204-05 (8th Cir. 1999); *Smith v. Watkins,* 159 F.3d 1137, 1138-39 (8th Cir. 1998).

In their First Amended Complaint, even after repleading Plaintiffs do not allege that the Katy ISD School Board had any involvement in what happened to J.W.  They clearly understand that they must meet the *Monell* standard, as they include a section called "Unconstitutional Policies, Procedures, Practices & Customs." (FAC, p. 15.)  However, Plaintiffs do not and cannot show any evidence to support their boilerplate *Monell* allegations; they do not explain what policies the District supposedly should have had but didn't, or what policies the District did have but that Officer Paley supposedly ignored.  Although it is clear from the First Amended Complaint that the KISD Board of Trustees (the policymaker, under Texas law, for purposes of § 1983) played no role in anything that happened to J.W., Plaintiffs have offered no evidence that would show how J.W.'s treatment by Officer Paley occurred because of the absence of – or, in accordance with -- official KISD policy or firmly entrenched custom. Plaintiffs have not shown that the KISD Board of Trustees adopted specific policies, regulations, bylaws, or ordinances that contributed to J.W.'s treatment, nor that the Board permitted "persistent and widespread practices" or "practices that are permanent and well settled and deeply embedded traditional ways of carrying out policy." *Bennett v. City of Slidell*, 728 F.2d 768, 767 (5th Cir. 1984).

In fact, the Katy ISD Police Department has detailed and well-established policies regarding both the Use of Force in general (*see* Policy 200, "Use of Force", attached as Exhibit B-

8), the use of tasers specifically (*see* Policy 208, "Conducted Energy Devices", *id*.), and policies that provide guidelines for interacting with those who may be experiencing a mental health or emotional crisis.  (See Policy 361, "Crisis Intervention Incidents," *id*.) Policy 200 specifically states that "Officers shall use only that amount of force that reasonably appears necessary given the facts and circumstances perceived by the officer at the time of the event to accomplish a legitimate law enforcement purpose."  (Ex. B-8, Sec. 200.3), and provides officers a number of factors that they should take into consideration when determining whether to apply force and evaluating whether an officer has used reasonable force.  (*Id*. at Sec. 200.3.2.)  It authorizes the use of "pain compliance techniques" for "controlling a physically or actively resisting individual," and again offers factors to consider before using such techniques.  (*Id*. at Sec. 200.3.3.)  Policy 208 requires that a verbal warning be given before a taser is used (*Id*. at Sec. 208.4), which Officer Paley did in this case, and only authorizes the use of the taser:

> [W]hen the circumstances perceived by the officer at the time indicate that such application is reasonably necessary to control a person:
> (a) The subject is violent or is physically resisting.
> (b) The subject has demonstrated, by words or action, an intention to be violent or to physically resist, and reasonably appears to present the potential to harm officers, him/herself or others.

(*Id*. at Sec. 208.5.1.)  Policy 208 requires that persons who are tased be immediately medically assessed and treated (id. at Sec. 208.7), which occurred here.  (Ex. A, ¶¶ 9-10; Ex. E, ¶ 5.)  Policy 200 requires the use of force to be reported, documented and investigated (*id*. at Secs. 200.5 & 200.7), all of which were done in the case of Paley's use of the taser on J.W.  (Ex. B-2.)

Plaintiffs have alleged that the District failed to properly train and/or supervise its staff (*see*, *e.g*., FAC, ¶¶ 122-123), which presumably led to the constitutional violations against J.W., since "failure to train" is not a separate cause of action under Section 1983, but is simply one method for proving entity liability for the violation of an independent constitutional right.  *See,*

*e.g.*, *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006).   While "[t]here are 'limited circumstances' in which a local government will be held liable because it inadequately trained or supervised its employees, who then infringed upon a plaintiff's constitutional rights," *Thomas v. Roberts*, 261 F.3d 1160, 1173 (11th Cir. 2001), the scope of failure to train liability is a narrow one.   *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001).   To make out a "failure to train" claim, the plaintiff must show three things:

> (1) the training or hiring procedures of the municipality's policymaker were inadequate;
> (2) the municipality's policymaker was deliberately indifferent in adopting the hiring or training policy, and
> (3) the inadequate hiring or training policy directly caused the plaintiff's injury.

*Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996).

In *City of Canton v. Harris*, 489 U.S. 378 (1989), the Supreme Court held that a "failure to train" plaintiff must show that the "need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."   *Id.* at 390.   The failure to train must be an intentional choice, not a mere oversight.   *Id.* at 387.   Plainly, even "adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable."   *Id.* at 391.   To show deliberate indifference, a plaintiff generally must demonstrate a "pattern of similar constitutional violations by untrained employees."   *Connick v. Thompson*, 563 U.S. 51, 131 S. Ct. 1350, 1360 (2011). In the absence of previous violations, a plaintiff must show the alleged violation was a "highly predictable consequence" of a failure to train. *Bd. of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 398 (1997).

Plaintiffs here have not suggested any training that they believe the District should have provided to its employees – and certainly none that was legally required – which they believe

---

would have prevented J.W.'s encounter with Officer Paley.  Their claim that the District "failed to train staff" is again just circuitous boilerplate allegations that Officer Paley should not have allegedly violated J.W.'s rights under the Constitution in the first place.  Here, the evidence does not bear out their failure to train claim, but instead shows that the District offered relevant training that Officer Paley had taken.  Katy ISD trained all of its officer on the use of force generally, the use of tasers specifically, and how to deal with persons suffering from some form of mental disability.  (*See* Exhibit B-3 & Exhibit B-4.).  The School-Based Law Enforcement "(LE") Training is a 20 hour course that includes 4-hour segments on the following topics:

> **Section One:** Child and Adolescent Development and Psychology (4 Hours)
> **Section Two:** Mental Health Crisis Intervention (4 Hours)
> **Section Three:** De-escalation Techniques and Techniques for Limiting the Use of Force (4 Hours)
> **Section Four:** Mental and Behavioral Health Needs of Children with Disabilities or Special Needs (4 Hours)
> **Section Five:** Positive Behavioral Interventions (4 Hours)

(Ex. B-4.)  All of these topics are obviously highly relevant to the issues confronting Officer Paley in his dealings with J.W.  As can be seen from Paley's training records, Paly had the taser training on August 18, 2016 (about 3 months before the incident with J.W.), another 2 hour Use of Force training on June 29, 2016 (about 5 months before the incident), and the School-Based LE Training on March 16, 2016 (about 8 months before the incident).[4]  (*See* Ex. A-1.)  Plaintiffs' allegation that the District failed "to sufficiently *train* staff" (FAC, ¶ 122) is therefore completely unsupported by, and in fact contradicted by, the undisputed evidence in this case.

When prior incidents are used to show a pattern of deficient training, they "must have occurred for so long or so frequently that the course of conduct **warrants the attribution to the**

---

[4] It should also be noted that this was not the first time that Paley had had these courses; he had an 8-hour Use of Force course and 6-hour taser course in August 2015, the School-Based LE Training in June 2015, a 6-hour taser course on August 2014, and a 16-hour Use of Force course in February 2014.  (Ex. A-1.)  He also continued to receive such training after the incident with J.W., including a 2-hour taser course in August 2018.  (*Id.*)

*governing body of knowledge* that the objectionable conduct is the expected, accepted practice of city employees." *City of Houston v. Piotrowski*, 237 F.3d 567, 579 (5th Cir. 2001) (emphasis added). Here, the Plaintiffs have offered no evidence of prior incidents similar to what they allege happened to J.W. In fact, in the 3-year period leading up to the incident at issue here (2014-2016), there were only two other incidents in which a Katy ISD police officer used a taser and/or involved KISD students, and one of them was a coincidence.[5] (Ex. B, ¶ 5; Exs. B-6 & B-7.) In both situations a Use of Force investigation was conducted and the KISD officer was cleared of any wrongdoing, and in neither situation was a complaint made by anyone involved that the officer had actually used *excessive* force. (*Id.*) This is insufficient to show that similar behavior by Paley (or other KISD employees) must have occurred for so long or so frequently that the course of conduct warrants its attribution to the KISD Board of Trustees. *See*, *e.g.*, *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002) (eleven (11) instances of allegedly-illegal warrantless searches was insufficient as a matter of law to create liability for the City of Houston under § 1983.)

And the need for training must be obvious to the KISD Board of Trustees; as the Fifth Circuit has noted, "[a]ctual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority" *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984); *see also Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 413 (5th Cir. 2015) ("Thus, even assuming the alleged customs, policies, and failures to train existed among Marion ISD employees, there is no evidence that the Board knew of this behavior or condoned it.") (internal citations omitted). In other words, the pattern has to be significant enough to come to the attention of the school board, which then

---

[5] A Katy ISD Police officer was driving through a Wal-Mart parking lot, and was flagged down by a Wal-Mart employee to assist in apprehending some shoplifters, and a taser was used during a confrontation with the male shoplifter (who was not a KISD student). (Ex. B-7.)

ignores the need for additional training, and that lack of training then causes the injury to the plaintiff.  But the evidence here shows that the District was and is providing training to its officers on the use of force generally, the use of tasers specifically, and how to deal with persons suffering from some form of mental disability, and Plaintiffs have no evidence that would suggest that a need for *additional* or *different* training was so obvious to the KISD Board of Trustees that municipal liability can be attributed to the District.  As such, summary judgment is appropriate as a matter of law on Plaintiffs' Section 1983 claims – or their "Unconstitutional Policies, Procedures, Practices & Customs" claim -- against the District.

**D.**   **Plaintiffs have failed to prove a violation of a generalized "constitutional right to an education," under either the United States or the Texas Constitution.**

Plaintiffs also appear to be alleging that J.W. was deprived of a generalized "constitutional right to an education."  (*See* FAC, ¶¶ 145-152.)  The United States Supreme Court has rejected the idea that there is such a generalized "right to an education":  "Education, of course, is not among the rights afforded explicit protection under our Federal Constitution. Nor do we find any basis for saying it is implicitly so protected."  *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35, 93 S. Ct. 1278, 1297 (1973).  *See also Plyler v. Doe*, 457 U.S. 202, 221, 102 S. Ct. 2382, 2396 (1982) ("Public education is not a 'right' granted to individuals by the Constitution.").  In *Barnes v. Symeonides*, 44 F.3d 1005, 1995 WL 10518 (5th Cir. 1995), a student who was dropped from his university after failing to pay his tuition was told he could not reapply until he paid his indebtedness; the student claimed he had a vested property right in his education, but the Fifth Circuit disagreed: "Education-particularly post-graduate or professional education-is not a right afforded either explicit or implicit protection under the Constitution."  *Id.* at *2; *see also Stock v. Texas Catholic Interscholastic League*, 364 F. Supp. 362, 365 (N.D. Tex. 1973) ("The only plausible argument is that playing football is a part of one's education and that education is a

Constitutionally guaranteed right. This argument fails, however, in view of the Supreme Court's opinion in [*Rodriguez*].")  In *Jeffrey v. Bd. of Trustees of Bells ISD*, 261 F. Supp. 2d 719, 725 (E.D. Tex. 2003), *aff'd*, 96 F. App'x 248 (5th Cir. 2004), the Eastern District noted that not only was a generalized constitutional right to an education not provided by the United States Constitution, it was not provided by the Texas Constitution, either.

Here, Plaintiffs are not arguing that J.W. was deprived of an education because he was expelled or otherwise disciplined, which might have raised different issues; instead, Plaintiffs admit that Ms. Washington voluntarily decided to keep J.W. home from school, "[d]ue to fear for his safety," and that that was what caused him to miss school "and educational benefits" for six months.  (FAC, ¶ 114.)  The school made numerous attempts to contact J.W.'s mother, both by email and phone, about his absences, but Mrs. Washington did not return calls.  (Ex. E, ¶¶ 11-14.) Plaintiffs' decision to keep J.W. home from school, however well-intentioned, does not implicate any protected right to an education, under federal or state law, and as such summary judgment on this claim is appropriate.[6]

## V.  <u>CONCLUSION</u>

For the forgoing reasons, Defendants Katy Independent School District and Officer Elvin Paley respectfully request that this Court grant their motion and dismiss all claims against them with prejudice. Defendants request such other and further relief to which they have shown themselves to be justly entitled.

---

[6] To the extent that this claim is also being asserted against Officer Paley, he did not violate a "right to education" that was clearly established at the time, and as such, Officer Paley is entitled to qualified immunity from this claim.  Also, to the extent that the Plaintiffs are asserting their "constitutional right to an education" under the Texas Constitution, said claim is improper as a matter of law, because  Plaintiffs only seek monetary damages as part of this lawsuit, and do not seek any equitable relief.  There is no private cause of action against a governmental entity or its officials for money damages relating to alleged violations of Texas constitutional rights. *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 149 (Tex. 1995).

Respectfully Submitted,

**THOMPSON & HORTON LLP**

By:_____
     Christopher B. Gilbert
     State Bar No. 00787535
     Southern District No. 17283

3200 Southwest Freeway, Suite 2000
Houston, Texas  77027
Telephone:  (713) 554-6744
Facsimile:   (713) 583-7698
E-mail: cgilbert@thompsonhorton.com

**ATTORNEYS FOR DEFENDANTS KATY ISD AND ELVIN PALEY**

**OF COUNSEL:**

Hailey R. Janecka
State Bar No. 24099491
Southern District No. 3151241
**THOMPSON & HORTON LLP**
3200 Southwest Freeway, Suite 2000
Houston, Texas 77027
Telephone:  (713) 554-6761
Facsimile:  (713) 583-5643
hjanecka@thompsonhorton.com

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing pleading has been served on all counsel of record through the Court's electronic filing system, on April 11, 2019:

Mr. Martin J. Cirkiel
Ms. Holly Terrell
Cirkiel & Associates, P.C.
1901 E. Palm Valley Boulevard
Round Rock, Texas 78664
***Attorney for the Plaintiffs***

Christopher B. Gilbert