United States District Court
Southern District of Texas

**ENTERED**

September 04, 2019

David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| LORI WASHINGTON, *ex rel.* J.W., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-18-1848 |
| | § | |
| KATY INDEPENDENT SCHOOL | § | |
| DISTRICT and ELVIN PALEY, | § | |
| | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

In 2016, an officer in the Katy Independent School District's police department tasered and handcuffed J.W., a 17-year-old special-education student.  His mother, Lori Washington, sued the District and the School Resource Officer who was involved, Elvin Paley, on J.W.'s behalf, for violating his federally protected rights.  (Docket Entry Nos. 1, 12).  In June 2019, the court granted the defendants' motion for summary judgment on the claims for violations of the Americans with Disabilities Act (ADA), the Rehabilitation Act, the Equal Protection Clause, and J.W.'s due-process rights to bodily integrity.  The court denied the motion for summary judgment on the § 1983 claim against Officer Paley.  (Docket Entry No. 34).

Ms. Washington now moves for reconsideration of the court's grant of summary judgment on the ADA and Rehabilitation Act claims.  (Docket Entry No. 39).  The defendants responded, and Ms. Washington replied.  (Docket Entry Nos. 43, 49).

Based on the motion, response, and reply; the parties' submissions; and the applicable law, the court denies Ms. Washington's motion for reconsideration, analyzing both administrative exhaustion and the merits of the § 504 and ADA claims.  (Docket Entry No. 39).  The reasons for

this ruling are detailed below.

## I.      Background

The relevant background is detailed in this court's June 2019 Memorandum and Opinion and only summarized here.  (*See* Docket Entry No. 34).  Briefly, J.W. has emotional and intellectual disabilities that required special-educational services and accommodations while he was a student at the Mayde Creek High School in 2016.  (Docket Entry No. 12 at ¶¶ 31–32).  In November 2016, J.W. became upset at school, tried to leave the school building to walk himself home, and was tasered by Officer Paley when he refused to remain in the building.  (*See* Docket Entry Nos. 28-10, 29-2; *see also* Docket Entry No. 28-6 at 2).  Another school resource officer handcuffed J.W. after he was tasered and lying on the floor, and Officer Paley called emergency medical services.  (*See* Docket Entry No. 28-1 at ¶¶ 7, 9; Docket Entry No. 29-2 at ¶¶ 31, 41–42; Docket Entry No. 28-10).  J.W. did not return to school that year.  (Docket Entry No. 12 at ¶¶ 93, 114).

Ms. Washington sued, alleging, among other claims, that the District had discriminated against J.W. based on his disabilities, in violation of § 504 of the Rehabilitation Act, 29 U.S.C. § 794, and the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.*  (*Id.* at ¶¶ 153–72).  Because J.W. received special-education services at the Mayde Creek High School under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1401 *et seq.*, Ms. Washington was required to exhaust any claims "relat[ed] to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child."  20 U.S.C. §§ 1415(b)(6)(A), (f).

Ms. Washington filed an administrative complaint in December 2017 under 20 U.S.C. § 1415(b)(7).  The complaint included J.W.'s § 504 and ADA claims, as well as his claim alleging

that the District had violated his right to a free and appropriate public education under the IDEA.
(Docket Entry No. 12 at ¶ 7; *see* Docket Entry No. 27 at 221–43).  The hearing officer dismissed
the § 504 and ADA claims for lack of jurisdiction and dismissed the IDEA claims as time-barred
under the one-year statute of limitations.  (Docket Entry No. 27 at 72).

The defendants argued in their summary judgment motion that Ms. Washington's § 504
and ADA claims had to be exhausted because they related to providing J.W. a free and appropriate
public education.  (Docket Entry No. 28 at 13–17).  The court agreed, concluding that under *Fry*
*v. Napoleon Community Schools*, 137 S. Ct. 743 (2017), the  § 504 and ADA claims were related
to a free and appropriate public education for J.W. because the "claims could not be brought if the
alleged conduct had happened outside school" and "rest[ed] on J.W.'s student status."  (Docket
Entry No. 34 at 16, 17 (citing *Fry*, 137 S. Ct. at 756)).  The court found that J.W.'s age and
graduation did not make administrative exhaustion futile, and that Ms. Washington "did not and
cannot show that she exhausted her administrative remedies."  (*Id.* at 18, 19).

Ms. Washington moves for reconsideration, arguing that the § 504 and ADA claims were
only about the tasering incident and did not implicate a "failure of special education services."
(Docket Entry No. 39 at 15).  She argues that the court committed clear error in applying *Fry*.  (*Id.*
at 16–21).  The defendants responded, arguing that the court's June 2019 Memorandum and
Opinion correctly applied *Fry* in concluding that Ms. Washington's § 504 and ADA claims were
sufficiently connected to relief available under the IDEA to require administrative exhaustion.
(Docket Entry No. 43).

The arguments on exhaustion and, as an alternative ground for deciding, on the merits of
the § 504 and ADA claims, are analyzed below.

**II.      The Standard for a Motion for Reconsideration**

The Federal Rules of Civil Procedure do not formally recognize a motion to reconsider. *See St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997) ("[T]he Federal Rules of Civil Procedure do not recognize a general motion for reconsideration."). Motions to reconsider that seek to amend a final judgment are treated as motions to alter or amend a judgment under Federal Rule of Civil Procedure 59(e), or motions for relief from judgment under Rule 60(b), depending on when the motion is filed. *Demahy v. Schwarz Pharm. Inc.*, No. 11–31073, 2012 WL 5261492, at *2 n.2 (5th Cir. Oct. 25, 2012) (citing *Tex. A & M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 400 (5th Cir. 2003)).   A motion for reconsideration is considered under Rule 59(e) if it is filed within 28 days of the court's ruling, and under Rule 60(b) if it is filed after that. *Demahy*, 2012 WL 5261492, at *2 n.2 (citing *Tex. A&M*, 338 F.3d at 400). However, Rule 54(b) applies to motions to reconsider interlocutory orders that do not dispose of every claim or resolve the rights of all parties to the litigation.   FED. R. CIV. P. 54(b); *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017).

Ms. Washington moves under Rule 59(e). (Docket Entry No. 39 at 8).   The court does not consider the standard under Rule 60(b), which permits courts to relieve a party of a final judgment, order, or proceeding but in extraordinary circumstances. *See In re Pettle*, 410 F.3d 189, 191 (5th Cir. 2005).   This motion is considered under Rule 54(b) because the court's June 2019 Memorandum and Opinion did not dispose of all claims or resolve the rights of all parties to this litigation. *See Caral v. Brennan*, 853 F.3d 763, 766 (5th Cir. 2017).

Rule 54(b) underscores the court's power to "reconsider, rescind or modify an interlocutory order for a cause seen by [the court] to be sufficient." *Stoffels ex rel. SBC Telephone Concession Plan v. SBC Commc'ns, Inc.*, 677 F.3d 720, 726 (5th Cir. 2012).   "Under Rule 54(b), 'the trial

court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'" *Austin*, 864 F.3d at 336 (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990), *abrogated on other grounds*, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 n.14 (5th Cir. 1994) (en banc)). Although motions to reconsider interlocutory orders are considered more leniently than motions to amend under Rule 59(e), the Rule 59(e) factors offer guidance. *See Livingston Downs Racing Ass'n v. Jefferson Downs Corp.*, 259 F. Supp. 2d 471, 474–75 (M.D. La. 2002).

A motion seeking reconsideration may not be used to relitigate matters, raise arguments, or submit evidence that could have been presented before the judgment or order was entered. 11 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2810.1 (3d ed.). "To obtain relief . . . , the movant must (1) show that its motion is necessary to correct a manifest error of law or fact, (2) present newly discovered or previously unavailable evidence, (3) show that its motion is necessary to prevent manifest injustice, or (4) show that its motion is justified by an intervening change in the controlling law." *Arceneaux v. State Farm Fire & Cas. Co.*, No. 07–7701, 2008 WL 2067044, at *1 (E.D. La. May 14, 2008).

## III.    Analysis

A plaintiff seeking relief on an IDEA claim that student with disabilities was denied a free and appropriate public education must first administratively exhaust that claim. 20 U.S.C. § 1415(i); *Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743, 750 (2017). A plaintiff must also exhaust administrative remedies for claims "under [] laws seeking relief that is also available under [the IDEA]," including § 504 and the ADA. 20 U.S.C. § 1415(I); *see Fry*, 137 S. Ct. at 750. Because the denial of a free and appropriate public education "is the only 'relief' the IDEA makes

5

'available,'" exhaustion of § 504 and ADA claims is necessary when a plaintiff invokes those laws to seek relief that is also available under the IDEA. *Fry*, 137 S. Ct. at 753.

In *Fry v. Napoleon Community Schools*, the Supreme Court offered some guidance for courts struggling to decide whether, and when, a § 504 or ADA claim should be included in the IDEA's exhaustion requirement. The Court explained that the lower courts must look to the gravamen, or essence, of the claim, examining whether the complaint focuses on the "means and ends" of the IDEA. *Id.* at 752, 755. If the § 504 and ADA claims essentially allege the denial of a free and appropriate public education, then the plaintiff must exhaust administrative remedies. *Id.* at 755. The Court offered two questions as a guide:

> First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or library? And second, could an *adult* at the school—say, an employee or visitor— have pressed essentially the same grievance?

*Id.* at 756. If the answer is "yes" to those questions, then the gravamen of the claim is not the deprivation of a free and appropriate education, and administrative exhaustion under the IDEA is unnecessary. *Id.*

Ms. Washington alleged that the District's refusal to allow J.W. to leave the school and Officer Paley's repeated use of the taser when J.W. tried to push past school staff to leave showed that the District "failed and refused to reasonably accommodate and modify services [for J.W.]." (Docket Entry No. 39 at 14). She argues that J.W.'s claims from the tasering are unrelated to his access to a free and appropriate public education and that the court misapplied *Fry*. (*Id.*). She points to out-of-circuit case law to support her argument that exhaustion is not required when § 504 and ADA claims relate to violence against a student who receives special education services under the IDEA. (*Id.* at 16–19).

Ms. Washington is correct that some courts considering § 504 and ADA claims in cases

about violence against students with intellectual disabilities at public schools have concluded that administrative exhaustion was unnecessary for those claims.  But the lines between when § 504 and ADA claims seek relief for the denial of a free and appropriate public education, and when the claims seek relief for violence that does not operate to deny the required education, is fact-specific and variable.  Questions of how to treat § 504 and ADA claims related to violence against students with emotional or intellectual disabilities continue to vex the courts.  *See, e.g.*, *Sophie G. by & Through Kelly G. v. Wilson Cty. Sch.*, 742 F. App'x 73, 79 (6th Cir. 2018) (noting that in many situations, "*Fry*'s clues will not always assist courts" because there is considerable overlap between the IDEA and other federal laws); *J.S., III by and Through J.S. Jr. v. Hous. Cty. Bd. of Educ.*, 877 F.3d 979, 986 (11th Cir. 2017) ("The cause of action here does not fit neatly into *Fry*'s hypotheticals.").  Ms. Washington's arguments raise a difficult set of questions.

Cases outside this circuit shed some light on how courts have analyzed similar claims in this gray and factually dependent area of the law.  The pattern evident from these cases is that when a plaintiff brings § 504 and ADA claims based exclusively on nondisciplinary violence against a student, exhaustion under the IDEA is not required.  However, if the alleged physical harm is connected to a disciplinary measure because of in-school disruptive behavior that interferes with attending classes or participating in other educational services, courts are more likely to conclude that the gravamen of the complaint relates to the denial of a free and appropriate public education.

The Third Circuit has helpfully explained that analyzing the "gravamen" of the claim under *Fry* "bespeaks concern with both individual claims as well as the collection of claims called a complaint."  *Wellman v. Butler Area Sch. Dist.*, 877 F.3d 125, 132 (3d Cir. 2017).  The court in *Wellman* worried that mechanically applying the central questions in *Fry* "without consideration

of the actual claims could result in situations where claims that are included in a complaint because they involve the same parties or course of events but do not involve the provision of a FAPE get swept up." *Id.*  The opinion counseled district courts to look to the entire complaint and the relief requested to decide whether "subject[ing] such a claim to [IDEA] procedural requirements . . . result[s] in any benefit to either the parties or court reviewing the matter at a later date." *Id.* at 133.

In *P.G. v. Rutherford County Board of Education*, 313 F. Supp. 3d 891 (M.D. Tenn. 2018), the issue was the § 504 and ADA claims arising from "the inappropriate and illegal use of physical restraints" on a student.  *Id.* at 899.  The plaintiff in *P.G.*, who had intellectual disabilities and a history of trying to leave school, alleged ongoing abuse from school staff, "an isolated strike to the face," inadequate training and remedial support measures, as well as the use of restraints at his preschool graduation ceremony.  *Id.* at 895, 901.  The court noted that "[m]ultiple courts have found that a complaint regarding restraint" alleges "a denial of a [free and appropriate public education] and requires administrative exhaustion." *Id.* (citing *J.L. v. Wyo. Valley W. Sch. Dist.*, 722 F. App'x 190, 192–93 (3d Cir. 2018); *J.M. v. Francis Howell Sch. Dist.*, 850 F.3d 944, 949–50 (8th Cir. 2017); *Rohrbaugh v. Lincoln Intermediate Unit*, 255 F. Supp.3d 589, 595–96 (M.D. Pa. 2017); *N.S. v. Tenn. Dep't of Educ.*, No. 3:16-cv-0610, 2017 WL 1347753, at *11 (M.D. Tenn. Apr. 12, 2017); *Parrish v. Bentonville Sch. Dist.*, No. 5:15-cv-05083, 2017 WL 1086198, at *31 (W.D. Ark. Mar. 22, 2017)).  These cases "recogni[ze] that the restraints are particular to the school environment and applied by school officials in the handling of special needs students." *Id.* at 900.  Applying *Fry*, the court explained that "restraint techniques are not implemented on adult employees or visitors of the . . . schools, nor are they implemented on minors such as the plaintiffs in other public institutions." *Id.* (first alteration omitted) (second alteration in original) (quoting

*N.S.*, 2017 WL 1347753, at *11).  But under the specific facts in *P.G.*, the court found that the allegations of ongoing physical abuse and the "isolated strike" did not require exhaustion because they were "bare allegations of violence (attributed to discrimination) . . . untethered from the core of [the student's] educational program." *Id.* at 903.

K.H. v. Antioch Unified School District*, No. C-18-07716-WHA, 2019 WL 2744721 (N.D. Cal. July 1, 2019), is also instructive.  A 14-year-old special-needs student became upset and removed himself from his classroom with permission, to calm himself down.  *Id.* at *1.  A teacher saw the student in the hallway and allegedly roughly grabbed him and pulled him toward a classroom.  *Id.*  Another teacher joined and held the student by the back of the neck.  *Id.*  The teachers then allegedly slammed the student to the floor, resulting in bleeding gums, a split lip, and a facial gash.  *Id.*  The district court denied the school district's motion to dismiss the student's § 504 and ADA claims based on the incident, concluding that "the appropriate inquiry" on administrative exhaustion "is whether the [teachers'] actions . . . were educational in nature." *Id.* at *7.  The district court concluded that because "[t]he injuries resulting from the restraint [were] not educational," the claims based on those injuries were not subject to IDEA exhaustion.  *Id.*

J.M. v. Francis Howell School District*, 850 F.3d 944 (8th Cir. 2017), concerned a student's § 504 and ADA claims based on incidents in which school staff put the student in physical restraints and held him in isolation.  *Id.* at 949.  The complaint alleged, as did Ms. Washington's amended complaint, that these incidents did not comply with the student's individual education plan.  *Id.* at 949–50.  The court held that the student had to exhaust the ADA and § 504 claims, emphasizing the complaint allegations that the incident did not comply with the student's IDEA plan requirements for services and accommodations based on his disabilities.  *Id.* at 948–49.

The defendants argue that the allegations in this case are "virtually the same allegations

9

that the *J.M.* court found required that the ADA and Section 504 claims be exhausted." (Docket Entry No. 43 at 10).   While acknowledging that the tasering incident took place outside a classroom, the District and Officer Paley contend that the analysis must not look only at the "moment when Paley decided to pull the trigger" on the taser.   (*Id.* at 14; *see id.* at 2–3); *see Wellman*, 877 F.3d 125.   According to the defendants, the amended complaint allegations under § 504 and ADA encompass all the actions leading up to the tasering, as illustrated by the allegation that "the school[] fail[ed] to follow the de-escalation procedures that [the plaintiffs] claim were set out in [J.W.'s individual education plan]."  (Docket Entry No. 43 at 14).

The court agrees with the defendants that the exhaustion analysis requires the court to consider more than just the tasering incident in isolation.   The persuasive case law from this and other circuits shows that the complaint as a whole, the allegations tied specifically to the § 504 and ADA claims, and the relief sought, are all relevant to analyzing whether exhaustion is necessary. As the court concluded in its June 2019 Memorandum and Opinion, Ms. Washington's allegations are closely tied to J.W.'s access to a free and appropriate public education, even if the inciting incident was Officer Paley's use of the taser on J.W.  The amended complaint allegations focus on J.W.'s status as a student with emotional and intellectual disabilities: his restricted ability to walk around school grounds, compared to other students; his inability to leave the school campus as other students would; and the impact of the tasering on his ability to attend school and to participate in the educational and other services required under the IDEA.  (*See* Docket Entry No. 12 at ¶¶ 2, 4, 35–41, 93–101, 114, 153–72).

For example, Ms. Washington alleges as part of the § 504 and ADA claims that the District "failed and refused to permit [J.W.] to leave the campus as [it] would have otherwise permitted a non-disabled student to do, solely because of his disability."  (*Id.* at ¶¶ 157, 169).  She also alleges

that J.W. is entitled to damages based in part on his "[l]oss of educational opportunities to the same extent as a non-disabled student," because the District's actions led him to miss "educational services that his non-disabled peers received." (*Id.* at ¶¶ 114, 183(a)).   The amended complaint alleged that J.W. lost these educational opportunities because he was too afraid to return to school after the tasering.

The complaint allegations focus on J.W.'s status as a student.   Although forbidding J.W. to move around the school building in grounds in ways available to other students do not directly tie to classroom teaching or special-education services, any restrictions alleged arose from the fact that J.W. was a student with disabilities that the IDEA covers.   As the court noted in its June 2019 Memorandum and Opinion, the § 504 and ADA claims rest on J.W.'s student status—there is no argument that an adult visitor or employee would have been forbidden to leave or tasered—and on the impact on the educational opportunities he was promised under the IDEA.

Ms. Washington's response to Officer Paley and the District's summary judgment motion highlights rather than reduces the connection between the § 504 and ADA claims and J.W.'s access to a free and appropriate public education.   (*See* Docket Entry No. 29).   Ms. Washington argued that the District had "not addressed the failure of staff to let J.W. walk through campus as would any non-disabled student, an accommodation to his disability encouraged by his teachers and educational plan." (*Id.* at 17).   She included in the summary judgment evidence J.W.'s student records, including his Individual Education Plan and forms from the Admission, Review, and Dismissal meetings discussing J.W.'s educational progress and goals.   (*See* Docket Entry Nos. 29-3, 29-4).   These arguments and summary judgment evidence reinforce the link between the § 504 and ADA claims and the claim that the District's and Officer Paley's actions interfered with J.W.'s access to a free and appropriate public education.

J.W.'s factual allegations and record evidence are very similar to *J.M. v. Francis Howell School District* and *P.G. v. Rutherford County Board of Education*. As in *P.G.*, the summary judgment evidence showed no genuine factual disputes material to concluding that J.W.'s injuries were the result of school staff members' efforts to calm him down and forcibly prevent him from leaving the school. While Ms. Washington urges the court to look at Officer Paley's use of the taser on J.W. in isolation, the § 504 and ADA claims, as alleged and as argued on summary judgment, focus on the school's decision not to let J.W. leave the building, the actions taken to stop him from leaving leading up to and culminating in the use f the taser and then handcuffs, and his lost educational opportunities after the tasering. To answer the questions posed in *Fry*: Ms. Washington's claims would not have arisen in a public facility that was not a school, or if he was an adult visitor or employee at the school. These allegations focus on J.W.'s status and treatment as a student and his educational accommodations. Under *Fry*, these claims must be exhausted.

In her reply, Ms. Washington informs the court for the first time that she "drops any claims that the initial disciplinary measures by the school, and the initial restraint by the school staff requires exhaustion." (Docket Entry No. 49 at 2). Instead, she seeks reconsideration only of the "claims that the initial use of the taser by [Officer] Paley, its continued use as a 'stun gun' . . . and [Officer Paley's] verbal assault of J.W." did not need administrative exhaustion. (*Id.* at 3). These are new arguments that were not raised on summary judgment and are not proper grounds for reconsideration of the court's June 2019 Memorandum and Opinion. These arguments could have been raised before the June 2019 Memorandum and Opinion issued. While IDEA exhaustion presents difficult legal and factual questions for the court, Ms. Washington has not shown that the court should reconsider its earlier judgment.

Even if the court had concluded that Ms. Washington was not required to administratively exhaust her § 504 and ADA claims, summary judgment on those claims would still be appropriate. The record evidence shows no factual dispute material to determining that the defendants did not intentionally discriminate against J.W. because of his disabilities.

Title II of the ADA and § 504 of the Rehabilitation Act both prohibit discrimination against qualified individuals with disabilities. Title II of the ADA focuses on disability discrimination in the provision of public services. The relevant part of Title II of the ADA provides:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. Section 504 of the Rehabilitation Act prohibits disability discrimination by recipients of federal funding. Section 504 provides:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . .

29 U.S.C. § 794. Both Title II of the ADA and § 504 are enforceable through a private right of action. *See, e.g.*, *Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011).

The elements of a claim under Title II of the ADA are that: (1) the plaintiff is a qualified individual under the ADA; (2) he was "excluded from participation in, or [was] denied benefits of, services, programs, or activities for which a public entity is responsible, or [was] otherwise . . . being discriminated against by the public entity"; and (3) "such exclusion, denial of benefits, or discrimination [was] by reason of his disability. *Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004) (citing *Lightbourn v. Cty. of El Paso*, 118 F.3d 421, 428 (5th Cir. 1997)); *see I.A. v. Seguin Indep. Sch. Dist.*, 881 F. Supp. 2d 770, 776 (W.D. Tex. 2012). To recover damages, a plaintiff must prove that the discrimination was intentional. *Delano–Pyle v. Victoria*

*Cty.*, 302 F.3d 567, 574 (5th Cir. 2002).  Courts use similar liability standards in interpreting claims under the ADA and § 504, but the Rehabilitation Act goes further by requiring a plaintiff to show that the defendants' discriminatory actions were "solely by reason of" the plaintiff's disability.  29 U.S.C. § 794; *see D.A. ex rel. Latasha A. v. Hous. Indep. Sch. Dist.*, 629 F.3d 450, 453 (5th Cir. 2002) ("Because this court has equated liability standards under § 504 and the ADA, we evaluate D.A.'s claims under the statutes together.").  It is well established that the ADA and § 504 do not create "general tort liability for educational malpractice." *D.A.*, 629 F.3d at 454 (quoting *Monahan v. Nebraska*, 687 F.2d 1164, 1170 (8th Cir. 1982)).

The Fifth Circuit has not articulated a clear standard for intentional discrimination under § 504 and Title II in the school context, but courts in this circuit have concluded that "the plaintiff must link the discrimination claims to some evidence of prejudice, ill-will, or spite," or, at the least, show deliberate indifference.  *A.N. v. Mart Indep. Sch. Dist.*, No. W-13-cv-002, 2013 WL 11762157, at *6 (W.D. Tex. Dec. 23, 2013), *aff'd sub nom. Nevills v. Mart Indep. Sch. Dist.*, 608 F. App'x 217 (5th Cir. 2015); *see Campbell v. Lamar Inst. of Tech.*, 842 F.3d 375, 380 (5th Cir. 2016) ("When the record is 'devoid of evidence of malice, ill-will, or efforts . . . to impede' a disabled student's progress, summary judgment must be granted in favor of the university." (quoting *Delano–Pyle v. Victoria Cty.*, 302 F.3d 567, 574 (5th Cir. 2002))); *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 263 (3d Cir. 2013) (the Fifth Circuit requires a "higher showing of intentional discrimination than deliberate indifference, such as discriminatory animus"); *Estate of A.R. v. Grier*, No. H-10-0533, 2013 WL 391159 (S.D. Tex. Jan. 30, 2013) (rejecting the argument "that proving intentional discrimination in providing benefits to individuals with disabilities is less burdensome than proving deliberate indifference about whether accommodations needed to provide access to benefits are in place.").

The Fifth Circuit has frequently applied the holding in *Monahan v. Nebraska*, 687 F.2d 1164, 1170 (8th Cir. 1982), concluding that "facts creating an inference of professional bad faith or gross misjudgment" are necessary to show intentional discrimination under § 504 or ADA when the IDEA is implicated. *D.A. ex rel. Latasha A.*, 629 F.3d at 455. Allegations that educational authorities "exercised professional judgment," even mistakenly, do not suffice unless they "depart grossly from accepted standards among educational professionals." *Id.* at 454–55 (quoting *Monahan*, 687 F.2d at 1171).

Ms. Washington's ADA claim on behalf of J.W. alleges that the District "failed and refused to reasonably accommodate and modify services to him" and "failed and refused to permit him to leave the campus as they would have otherwise permitted a non-disabled student to do." (Docket Entry No. 12 at ¶¶ 168, 169). The § 504 claim alleges that the District "failed to provide [J.W.] a safe and non-hostile educational environment" and "failed and refused to permit him to leave the campus as they would have otherwise permitted a non-disabled student to do, solely because of his disability." (Docket Entry No. 12 at ¶¶ 156, 157).

Ms. Washington argued in her response to the summary judgment motion that the record evidence shows factual disputes material to determining whether the District's treatment of J.W.— including stopping him from leaving the school, the tasering, and the restraints—violated § 504 and the ADA. She argues that the school officials involved in the incident, including Officer Paley, were aware that J.W. had disabilities; admitted that they did not want him to go outside by himself and leave the school grounds because of his disabilities; and that J.W. missed school because of the incident. (Docket Entry No. 29 at 23). Ms. Washington argued that the District did not "provide J.W. necessary accommodations and modifications to the school environment so he could benefit from services to the same extent as his non-disabled peers." (*Id.*). According to Ms.

15

Washington, the school officials had "various ways they could have kept J.W. safe without injuring him the process," such as using J.W.'s Behavioral Intervention Plan, allowing him to continue to walk off his frustrations, or giving him "food or drink to distract him." (*Id.* at 24).

The record evidence shows that the school officials' decision to keep J.W. from exiting the school was motivated by a desire to keep J.W. safe from the vulnerabilities his disabilities caused. Officer Paley stated in his declaration that he knew J.W. "was probably a special needs student because [J.W.] was in the PASS group," and that he "felt it was very important to keep [J.W.] in the building and on campus, because with his special needs, [he] believed that [J.W.] would be a danger to himself if he was allowed to just leave." (Docket Entry No. 28-1 at ¶¶ 2–4). The uncontroverted summary judgment evidence undermines any inference that this treatment was motivated by ill will, prejudice, or spite, or that the tasering was "by reason of" an animus toward J.W. because of his disabilities. The treatment of a disabled student may be different from that of a nondisabled student, but different is not necessarily discriminatory. A decision may take into account a student's disabilities and lack "evidence of prejudice, ill-will, or spite." *A.N.*, 2013 WL 11762157, at \*6; *see also S.H. ex rel. Durrell*, 729 F.3d at 263 (the Fifth Circuit requires a "higher showing of intentional discrimination than deliberate indifference, such as discriminatory animus"); *Estate of A.R. v. Grier*, 2013 WL 391159, at \*9.

*Pagan-Negron v. Seguin Independent School District*, 974 F. Supp. 2d 1020 (W.D. Tex. 2013), is instructive. A parent sued a school district for violating § 504 and the ADA by discriminating against her child, who had a speech impairment. *Id.* at 1024–26. The parent alleged that the school principal had discriminated against the student by disciplining him for his behavior-related disability. *Id.* at 1025–26. The defendants argued that although the student was removed from class, the action was motivated by the fact he was disrupting the class, not because of any

intentional discrimination because of the disability. *Id.* at 1029–30. The court granted summary judgment to the school district because, even if the child's disability contributed to his behavior, there was no evidence showing discriminatory intent in the principal's reaction. *Id.* at 1030.

The summary judgment evidence leads to a similar conclusion here. As Ms. Washington argued in her response to the summary judgment motion, the primary violation of § 504 and the ADA alleged is that "the District did not let J.W. walk around campus as it did non-disabled students," culminating in Officer Paley's use of the taser to prevent J.W. from leaving the school when he resisted orders to remain inside. (Docket Entry No. 29 at 6; *see* Docket Entry No. 12 at ¶¶ 157, 169). First, as discussed above, there is no evidence of intentional discrimination. Second, Ms. Washington did not offer or identify summary judgment evidence supporting her claim that a nondisabled student would have been able to walk the hallways freely with no staff intervention, or leave campus without staff or parental permission. Her summary judgment evidence includes the Katy Independent School District Mayde Creek High School Student Handbook for 2016–2017, which states that "[s]tudents may NOT leave the campus or building at any time for any reason during the school day without securing administrative approval and checking out through the Attendance Office." (Docket Entry No. 29-3 at 194). The Handbook also explains that "[c]orridor passes will be required for students going through the halls during the instructional day." (*Id.* at 206). Without any evidence that a nondisabled student would have been allowed to leave campus freely, or that the defendants would have gone against the Handbook policy and allowed a nondisabled student to leave despite instructions to remain in the school building, the evidence shows that discrimination against J.W. for his disabilities was not the reason for his treatment. *Cf. A.N.*, 2013 WL 11762157 at *6; *see also Gohl v. Livonia Pub. Sch. Sch. Dist.*, 836

17

F.3d 672, 683 (6th Cir. 2016) (citing *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 709 (6th Cir. 2006)).

Ms. Washington also did not offer or identify summary judgment evidence that could support a reasonable inference that the District "*refused* to provide reasonable accommodations for the handicapped plaintiff to receive the full benefits of the school program." *D.A. ex rel. Latasha A.*, 629 F.3d at 454 (emphasis in original) (quoting *Marvin H. v. Austin Indep. Sch. Dist.*, 714 F.2d 1348, 1356 (5th Cir. 1983)). The summary judgment evidence shows that the school had frequently evaluated J.W. and created a detailed plan to address his educational needs. The evidence also showed that school officials reached out on numerous occasions after the tasering to speak with Ms. Washington about getting J.W. back to school. Denise Majewski, the school's student-support principal, stated that she and other staff members contacted Ms. Washington throughout December 2016 via phone calls and emails, without success, and that in March 2017, the school gave Ms. Washington "information on homebound services," but she did not "return[] the paperwork or [give] us consent for the school to speak with J.W.'s psychiatrist." (Docket Entry No. 28-8 at 3–4). The summary judgment evidence also shows that the school and Ms. Washington attempted to meet in April 2017, then rescheduled it to May 22, 2017, because both parties wanted attorneys present. (*Id.* at 4). This evidence shows that the school tried to have J.W. return. Ms. Washington did not offer or identify controverting summary judgment evidence showing that any delay or failure to communicate about J.W.'s return was motivated by discrimination against J.W. because of disabilities.

Ms. Washington now urges the court to look exclusively to the moments of the tasering in isolation—an argument not raised in her response to the summary judgment motion or in her amended complaint. (Docket Entry No. 49 at 2). In linking the tasering to the § 504 and ADA

claims, Ms. Washington argued in her response to the summary judgment motion that the steps the school staff and Officer Paley took to prevent J.W. from leaving the school, leading up to the use of the taser and restraints, "failed to provide J.W. necessary accommodations and modifications to the school environment." (Docket Entry No. 29 at 23). Her argument rested on the "various ways [the District] could have kept J.W. safe without injuring him the process," including redirecting him to another part of the school, offering him food, or having more staff members blocking the door. (*Id.* at 23, 24). She also pointed to the declarations of Officer Paley and school staff stating that they were worried about letting J.W. leave campus because of his disabilities. (*See id.* at 23). While the way the District handled the situation is troubling, that the staff and Officer Paley were concerned about J.W.'s safety in deciding to stop him from leaving school grounds is not sufficient to show a genuine factual dispute material to determining that the District did not intentionally discriminate against J.W. because of his disabilities.

The absence of a genuine factual dispute material to her § 504 and ADA claims is an additional reason not to reconsider the June 2019 Memorandum and Opinion granting the defendants summary judgment on those claims.

## IV.    Conclusion

Ms. Washington's motion for reconsideration, (Docket Entry No. 39), is denied.

SIGNED on September 4, 2019, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge

19