# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
June 23, 2021

Lyle W. Cayce
Clerk

No. 19-20429

J. W.; Lori Washington, a/n/f J.W.,

                       *Plaintiffs—Appellees*,

versus

Elvin Paley,

                       *Defendant—Appellant.*

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CV-1848

United States District Court
Southern District of Texas
FILED
NOV 26 2021
Nathan Ochsner
Clerk of Court

Before King, Jones, and Costa, *Circuit Judges*.

Per Curiam:[*]

    This is a suit against a school resource officer for tasing a special education student who was trying to leave the school after engaging in disruptive behavior. The district court denied summary judgment based on its conclusion that the facts, taken in the light most favorable to the plaintiff, supported a finding of excessive force under a Fourth Amendment analysis.

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 19-20429

Although some of our cases have applied the Fourth Amendment to school official's use of force, other cases have held that such claims cannot be brought. That divide in our authority is the antithesis of clearly established law supporting the existence of Fourth Amendment claims in this context. As a result, the defendant prevails on his qualified immunity defense.

I.

When the events at issue in this case took place, J.W. was a 17-year-old special education student at Mayde Creek High.[1] One day he got into an argument with another student over a card game. He cursed, yelled, and punched the other student before storming out of a classroom and into a hallway. J.W. went to a "chill out" classroom he would go to when he was upset, but another student was already there. He threw a desk across the room, kicked a door, and yelled that he hated the school. J.W. then headed toward doors leading out of the school.

School officials who saw J.W.'s outbursts notified Assistant Principal Denise Majewski, who in turn asked school resource officer Elvin Paley for help keeping J.W. inside the building. When Paley arrived at the exit, a security guard, another school resource officer, a school coach, and Majewski were already there.

The district court summarized what happened next as revealed by Paley's bodycam:

> The recording shows J.W. pacing in front of the door leading outside the school building and complaining to the school staff member blocking the door that he wants to leave so he could walk home and calm down. He is not yelling at the staff

---

[1] Given the summary judgment posture, the facts that follow are taken in the light most favorable to the plaintiff.

2

members, but the video recording shows him looking agitated and occasionally raising his voice. The recording then shows J.W. starting to push the door open. The staff member pushes back on the door to keep J.W. inside, but it does not appear that J.W. pushes the staff member, as the Katy School District contends. Within about five seconds of J.W. pushing on the door, Officer Paley moves toward J.W. and the staff member. Officer Paley's body camera then becomes dark as he pushes up against J.W.'s body. Both Officer Paley and the staff member tell J.W. to "calm down" several times. A male voice threatens J.W. with tasing. About 20 seconds later, the male voice says, "You are not going to get through this door, just relax." J.W. then begins screaming.

The video becomes clear again as Officer Paley moves away from J.W. The recording shows two individuals holding J.W. Approximately 10 seconds after Officer Paley tells J.W. to relax, Officer Paley tells the individuals holding J.W. to "let him go," and fires the taser. J.W. immediately screams and falls to his knees. About 5 seconds later, the video recording shows Officer Paley beginning to "drive stun" J.W. near his bottom right torso, and then on J.W.'s upper back. "Drive stun" means to hold the taser against the body without deploying the prongs. J.W., still on his knees, then falls to the ground completely. The taser is used on J.W. for approximately 15 seconds. This use of the taser on J.W.'s upper back continues after J.W. is lying face down on the ground and not struggling.

School officials called emergency medical services and the school nurse. Eventually, J.W. was taken to a hospital. J.W. missed several months of school after the incident. J.W. contends he suffers from severe anxiety and posttraumatic stress disorder as a result of the tasing.

J.W. and his mother brought various claims against Paley and Katy Independent School District. The defendants moved for summary

No. 19-20429

judgment, which the district court granted on all claims except for a section 1983 claim against Paley alleging excessive force under the Fourth Amendment right.

Paley filed this interlocutory appeal, which is allowed for denials of qualified immunity that turn "on an issue of law." *Kinney v. Weaver*, 367 F.3d 337, 346 (5th Cir. 2004) (en banc).

II.

A plaintiff can overcome an official's qualified immunity if he can show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc) (citation omitted). Courts can choose which of these elements to address first. *Id.* We resolve this case on the second ground because our law does not clearly establish a student's Fourth Amendment claim against school officials.

We start with an issue on which our law is quite clear even if it is at odds with the law in in other circuits: students cannot assert substantive due process claims against school officials based on disciplinary actions. *See Fee v. Herndon*, 900 F.2d 804 (5th Cir. 1990). Although recognizing that corporal punishment "is a deprivation of substantive due process when it is arbitrary, capricious, or wholly unrelated to the legitimate state goal of maintaining an atmosphere conducive to learning,'" *id.* at 808 (citation omitted), we held that such punishment does "not implicate the due process clause if the forum state affords adequate post-punishment civil or criminal remedies for the student to vindicate legal transgressions," *id.* Because we concluded that Texas does provide remedies for excessive corporal punishment, we dismissed a student's substantive due process claim challenging a principals' paddling. *Id.* at 810. *Fee* has been criticized, *Moore v. Willis Indep. Sch. Dist.*,

4

233 F.3d 871, 876–80 (5th Cir. 2000) (Wiener, J., specially concurring); *Neal ex rel. Neal v. Fulton Cnty. Bd. of Educ.*, 229 F.3d 1069, 1075 n.2 (11th Cir. 2000) but remans binding in our circuit, *T.O. v. Fort Bend Ind. Sch. Dist.*, -- F.3d --, 2021 WL 2461233, at *2-3 (June 17, 2021).

What about the Fourth Amendment right J.W. asserts? Perhaps the rejection of a substantive due process right does not also doom the more specific right to be free from unreasonable seizures. After all, the Supreme Court has emphasized that courts should ground claims in textually specific constitutional rights rather than in the "the more generalized notion of substantive due process." *See Cty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998); *see also Graham v. Connor*, 490 U.S. 386, 395 (1989) ("Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims."). And the Fourth Amendment's companion right to be free from unreasonable searches applies in schools, though its protections are lessened to account for pedagogical interests. *See Veronia Sch. Dist. 47 v. Acton*, 515 U.S. 646 (1995).[2]

J.W. can find some support in our caselaw for his Fourth Amendment claim. In a case dealing with a student's claim of excessive detention (though not excessive force), we said that the Fourth Amendment "right extends to seizures by or at the direction of school officials." *Hassan v. Lubbock Indep. Sch. Dist.*, 55 F.3d 1075, 1079 (5th Cir. 1995). An unpublished, and thus nonbinding, opinion later held that a claim of excessive force brought against

---

[2] At least two courts of appeals allow Fourth Amendment claims challenging excessive discipline of students. *See Preschooler II v. Clark Cnty. Sch. Bd. of Tr.*, 479 F.3d 1175, 1182 (9th Cir. 2007); *Wallace by Wallace v. Batavia Sch. Dist. 101*, 68 F.3d 1010, 1016 (7th Cir. 1995).

two school security guards was "properly analyzed under the Fourth Amendment." *Keim v. City of El Paso*, 162 F.3d 1159, 1998 WL 792699, at *1, *4 n.4 (5th Cir. 1998) (per curiam) (unpublished); *see also Campbell v. McAlister*, 162 F.3d 94, 1998 WL 770706, at *3 (5th Cir. 1998) (per curiam) (unpublished) (not deciding whether the Fourth or Fourteenth Amendment applied but noting that *Graham v. Connor* indicates that claims challenging governmental forces should "be confined to the Fourth Amendment alone"). Most recently, a published decision held that factual disputes required trial of a Fourth Amendment excessive force claim brought against a school resource officer who slammed a student into a wall. *Curran v. Aleshire*, 800 F.3d 656 (5th Cir. 2015).

The problem for J.W. is that at least one decision from our court, albeit an unpublished one, rejected the notion of Fourth Amendment claims based on school discipline. We reasoned that allowing a Fourth Amendment challenge to a teacher's choking a student would "eviscerate this circuit's rule against prohibiting substantive due process claims" based on the same conduct. *Flores v. Sch. Bd. of DeSoto Par.*, 116 F. App'x 504, 510 (5th Cir. 2004) (unpublished). The even bigger obstacle to J.W.'s claim may be *Fee*'s comment, though the case did not involve a Fourth Amendment claim, that "the paddling of recalcitrant students does not constitute a [F]ourth [A]mendment search or seizure." 900 F.2d at 810.

The upshot is that our law is, at best for Paley, inconsistent on whether a student has a Fourth Amendment right to be free of excessive disciplinary force applied by school officials. That does not make for either the "controlling authority" or "consensus of cases of persuasive authority" needed to show a right is clearly established. *Wilson v. Layne*, 526 U.S. 603, 617 (1999). The best case for J.W., and the one the district court understandably relied on, is *Curran*. Although that case did allow a Fourth Amendment claim against a school resource officer to get past summary


judgment, the defendant had not argued that a student's Fourth Amendment claim was at odds with *Fee*. As qualified immunity is an affirmative defense, *Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 577 (5th Cir. 2009), the officer's failure to assert immunity on the grounds that students cannot bring Fourth Amendment excessive force claims meant the question was not squarely before the court.

Citing many of the cases we have just discussed, our court recently held that a plaintiff could not identify a clearly established Fourth Amendment right against school officials' use of excessive force. *See T.O.*, 2021 WL 2461233, at * 4. That conclusion renders Paley immune from the Fourth Amendment claim asserted in this case.

\* \* \*

The denial of summary judgment is REVERSED and judgment is RENDERED in favor of Paley.